**Electronically Filed
Supreme Court
SCWC-13-0000107
04-DEC-2015
09:24 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---oOo---

_____

PHILIP CEDILLOS, Petitioner/Plaintiff/
Counterclaim Defendant-Appellant,

vs.

PATRICIA MASUMOTO, Respondent/Defendant/
Counterclaim Plaintiff-Appellee.

_____

SCWC-13-0000107

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0000107; DC-CIVIL NO. 12-1-2171)

DECEMBER 4, 2015

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

This case is a landlord-tenant dispute between

Petitioner/Plaintiff/Counterclaim Defendant-Appellant Philip

Cedillos ("Cedillos"), pro se, and Respondent/Defendant/Counterclaim Plaintiff-Appellee Patricia Masumoto ("Masumoto").  Cedillos timely applied for writ of certiorari on August 31, 2015 from a July 2, 2015 Judgment entered by the Intermediate Court of Appeals ("ICA") pursuant to its May 27, 2015 Summary Disposition Order ("SDO").  The ICA affirmed the District Court of the Second Circuit's ("district court['s]") "January 17, 2013 Judgment for Possession and Writ of Possession" in favor of Masumoto.

In his Application for Writ of Certiorari ("Application"), Cedillos presents three questions:

> A. Did the ICA commit grave error of law and fact by determining that despite the harmless error, the grant of summary possession was still correct because Petitioner did not set forth any evidence or establish retaliatory eviction in accordance with the provisions and restrictions of HRS 521-74, HRS 521-21 and HRS 521-71?
>
> B. Did the ICA commit grave error of fact and is its summary decision inconsistent with Hawai'i case and statutory law by finding — in direct contradiction to the district court's determination of bifurcation and record of proceedings— that the district court afforded Petitioner the opportunity to present affirmative defenses pursuant to HRS 521-42 and HRS 521-64, as they concerned repairs made and/or reported, that went unresolved and unpaid?
>
> C. Did the ICA commit grave error of fact by wrongfully affirming the denial of a rent trust fund and incorrectly asserting that Petitioner's request for establishment of a rental trust fund was improper?

For the reasons discussed herein, the ICA erred in affirming the district court's Judgment for Possession and Writ of Possession based on an October 6, 2012 45-day notice to

2

vacate.  Furthermore, there were no grounds to remove Cedillos based on a failure to pay rent for November 2012.

## II.  Background

### A.  Factual Background

Cedillos and Masumoto entered into an agreement for the rental of "271 Makaena Place, back unit" ("property") on November 1, 2011 for a period of six months.  The written rental agreement and two addenda did not include an attorney's fee provision.  Rent was $800 per month with Cedillos performing yard service worth $150 per month.  The lease ended on May 31, 2012, and automatically converted to month-to-month terms thereafter.

During the initial lease period, Masumoto e-mailed Cedillos on February 19, 2012 stating: (1) a prior tenant had issues with the legality of the rental units at 271 Makaena Place; (2) to Masumoto's knowledge, she had "brought all building construction and risk hazards up to code," and (3) the only "remaining illegality" was the stove in Cedillos's rental unit.  She asked Cedillos to remove the stove by the end of February.

After the lease converted to month-to-month terms, on August 2, 2012, Masumoto e-mailed Cedillos: "Beginning September 1, 2012, there will be a rent increase of $25/month."  By letter dated August 6, 2012, Cedillos asserted to Masumoto that:

> Hawaii Revised Statute[s] chapter 521-74 prohibits you from raising the rent or evicting me from my particular unit until you have brought the unit into compliance with applicable building and rental housing law.
>
> On February 12, 2012 you informed me via email that the unit you rented to me was not a legal rental unit under Hawaii landlord-tenant law.
>
> Even if you were able to legally raise the rent at my unit, your notice is defective and unenforceable under Hawaii Revised Statute 521-21. . . .
>
> Additionally, I have submitted, with this correspondence, an itemized invoice billing you, in part, for the mandated firewall installation between the separate dwellings at this address. Please refer to the applicable provision in Hawaii Revised Statute 521-64 if you have questions about this billed item.

(Emphasis added). Masumoto replied by e-mail dated August 7, 2012 stating that the unit's illegality was due to a stove that was left in Cedillos's unit "to accommodate [him] and [despite] knowing it was an illegal stove, [Cedillos] chose to use it anyway." Thus, the e-mail served to give Cedillos "1 month's notice that [Masumoto was] going to change the lease to mention, 'No stove included.'" Masumoto then intended to remove the stove after the notice period, and thereafter raise the rent by "$25/ per month, or 85 cents per day, prorated." Masumoto also took issue with Cedillos's invoice for erecting a firewall in another tenant's unit, as she was unaware Cedillos took such action until she received Cedillos's invoice. Masumoto noted that "[Cedillos's] having done such a thing constitutes reasons for an eviction."

Masumoto e-mailed Cedillos on August 28, 2012, stating that she would "respond to each [of Cedillos's invoices] soon," and asking for "September rent, without deductions [for

4

Cedillos's invoices], and add the $25." Cedillos paid $825 to Masumoto by checks dated September 1, 2012 and October 1, 2012. According to the stamps on the checks, the first check was deposited on or around September 12, 2012, and the second check was cashed on October 1, 2012.

By letter dated September 1, 2012, among other things, Cedillos (1) identified that Masumoto's notice of the $25 rent increase did not comply with HRS § 521-21 (2006), because it did not provide forty-five consecutive days of notice, and (2) asserted that after numerous notices to Masumoto of safety deficiencies in the rental units, he repaired the firewall in his unit and the upstairs unit pursuant to HRS § 521-64(c) (2006), and submitted receipts for the repair.

The first time Masumoto informed Cedillos that she wished him to leave the premises was on October 1, 2012. She gave him 30-days' notice. Cedillos responded by e-mail dated October 1, 2012, stating that the eviction notice violated HRS § 521-71 (2006) and was retaliatory under HRS § 521-74, and that he planned to initiate legal proceedings to protect himself. Cedillos filed a complaint in district court on October 5, 2012. It was served on Masumoto the same day. See infra Part II.B.

On October 6, 2012, Masumoto served a 45-day eviction notice on Cedillos, which stated the lease would be terminated November 20, 2012.

5

On October 30, 2012, Cedillos mailed his November rent to Masumoto at her P.O. Box address by way of USPS certified mail. According to Masumoto, she did not pick it up because she often "pick[s] up [her] mail at night" in Pukalani due to her spending a lot of time in Lahaina taking care of her mother. Because Masumoto did not pick up and sign for the certified mail during business hours, the post office stamped the certified envelope as being routed for return to Cedillos on November 19, 2012.

Through her attorney, Masumoto sent a "Five-Day Notice to Pay Rent or Quit [Premises]" letter dated November 26, 2012 to Cedillos. The letter stated that if Cedillos challenged the 45-day lease termination notice, rent for the month of November 2012 amounting to $950 ($800 plus $150 for non-performed yard work) was past due, and that payment in full was required within five days or else the lease would be terminated. If Cedillos did not challenge the 45-day lease termination notice, rent was due for the period of November 1 to November 20, 2012 ($633.33) plus $31.66 per day starting November 21, 2012.[1] Masumoto emphasized: "[P]lease note that it is our position that the rental agreement has been terminated based upon the 45 days

---

[1] The letter stated that the prorated amount would begin <u>October</u> 21, 2012, although that date appears to be a typographical error given the letter's content.

6

notice.  Still, if you dispute this fact, this notice is to provide you notice that your rental agreement will be terminated due to past due rent if payment is not made in a timely manner."

The "Five-Day Notice to Pay Rent or Quit [Premises]" letter was received by Cedillos on November 27, 2012.[2]  By letter dated November 27, 2012, Cedillos informed Masumoto's attorney that he received the letter that morning; that the deliverer threatened Cedillos and therefore a police report was filed to document the harassment; and that

> I dispute your assertions that rent has not been paid and I have enclosed here copies of certified mail sent to [Masumoto] that she refused to pick up and collect.  The content of the certified mail was the rent for November.  I will be also sending December rent in a timely manner using the same certified process.
> I also dispute the assertion that yard maintenance was not performed during this period.
> . . . .
> Please contact me immediately if you have any questions or desire to be the recipient of the refused certified mail that contained the November rent.

On November 27, 2012, Masumoto's attorney e-mailed Cedillos stating:

> We have not [received] rent payment for the month of November that you are now alleging was mailed on October 30, 2012.  If the check has been returned to you, please forward it to my office within five business days from November 26, 2012.  If the check has not been returned, please re-issue a new check and place a stop order on the prior check as we have not received it, and deliver the new check on or before five business days from November 26, 2012.

---

[2] Although no specific finding was made by the trial court with respect to the date Cedillos received the five-day notice, there is no dispute in the record that Masumoto's attorney sent Cedillos the notice on November 26, 2012, the date of the letter, but Cedillos did not receive the notice until November 27, 2012.

7

> In addition, to prevent further issues, please forward all rent payments to [Masumoto] c/o my office . . . .

Cedillos did not receive the returned certified mail envelope containing the November rent until November 29, 2012. Cedillos did not re-mail the returned envelope upon receipt. Having written out a new check, on November 29, 2012, Cedillos again submitted rent to Masumoto at her P.O. Box address by certified mail.  The mailing receipt from USPS indicated the expected delivery date was November 30, 2012.  There is no record of the actual delivery date.  The check was for $825 and the memo line stated "Rent 12/12."  According to a bank stamp on the check and Masumoto's endorsement, it was deposited by Masumoto on December 4, 2012.

On December 12, 2012, Cedillos responded to the November 27 e-mail by letter addressed to Masumoto's attorney stating:

> [I]n my Opposition to Defendant's Motion for Leave to File Counterclaim [filed on December 4, 2012], I informed the court that I would be in possession of the unclaimed and returned certified mail of November rent for 271 Makaena Pl, Makawao 96768 sent to Patricia Masumoto.  Now that the hearing is concluded I am giving you possession of the mail as you have previously requested.  I will also be submitting further rent payments directly to your office.

The certified envelope containing the November rent was included with the December 12, 2012 letter.  The attorney received the letter and November rent envelope on or around December 12, 2012.  Masumoto's attorney did not give the certified envelope

8

to Masumoto until the date of trial, January 7, 2013.  Masumoto acknowledged receipt of the letter and certified envelope.

On December 31, 2012, Cedillos sent his January 2013 rent payment of $825 to Masumoto by certified mail, which was received by Masumoto.

Cedillos asserted he performed the requisite monthly yard maintenance on November 3 and November 24, 2012, so his rent was $800, not $950.  Masumoto disputed this assertion.

## B.   District Court Proceedings[3]

As noted earlier, on October 5, 2012, Cedillos filed a complaint in district court alleging claims for retaliatory eviction, fraudulent misrepresentation, fraudulent inducement, failure to disclose, unfair or deceptive acts and practices, bad faith, and injunctive relief.  The specific violations alleged by Cedillos included, among others:

> 20.  In early May of 2012, [Masumoto] entered [Cedillos's] rental premises, in violation of HRS 521-53, and demanded that [Cedillos] fix her other neighboring (271A) rental unit's broken washing machine hose.  [Cedillos] complied and executed the repair immediately.
> . . . .
> 25.  On August 2, 2012 [Masumoto] sent to [Cedillos] a demand for rental increase in violation of HRS 521-21 and HRS 521-74. . . .
> . . . .
> 34.  [O]n October 1, 2012, [Cedillos] was served with an eviction notice that was not in conformity with the law.

Cedillos requested "damages and civil penalties," "punitive damages," and "establishment of a rental trust fund, pursuant to

---

[3] Presided by the Honorable Blaine J. Kobayashi.

HRS 666-21, in which the court shall direct [Masumoto] to deposit all disputed rental overpayments and for [Cedillos] to deposit future rental payments to be secured by the court until all litigation has concluded in this case."

At a hearing on October 15, 2012, the district court (1) denied Cedillos's request for a rental trust fund, (2) referred the parties to mediation, and (3) continued the matter for a status conference on December 10, 2012. Cedillos filed a Motion for Reconsideration on October 29, 2012, urging the court to establish a rental trust fund and to "order [Masumoto] to deposit rental overpayments into the Fund and [Cedillos's] deposit of future rental payments, until the conclusion of the litigation." Cedillos also asked that Masumoto be "enjoin[ed] . . . from further statutory violations and from further attempting to illegally dispossess [Cedillos] during the duration of [Cedillos's] litigation against [Masumoto] for retaliatory eviction."

On October 22, 2012, Masumoto filed a non-hearing motion for leave to file a counterclaim for summary possession. Cedillos opposed the motion, and asserted that Masumoto's motion was premature as he had not yet "overstayed the deadline of any legal eviction notice and post-deadline notices," and that Masumoto's counterclaim can become actionable "only if the court does not enjoin [Masumoto] in [Cedillos's] retaliatory eviction

case from further pursuing the illegal dispossession, and the time and notice requirements of statutory rules fulfilled." Further, Cedillos contested Masumoto's assertion that Cedillos refused to mediate.  Thus, in addition to responding to Masumoto's motion, Cedillos moved for Rule 11 sanctions against Masumoto and her attorney, arguing that there were "outrageous misstatements of fact" in Masumoto's motion.  Cedillos pointed to a letter from Mediation Services of Maui dated October 25, 2012 (which did not indicate when Cedillos contacted the mediator's office), stating that "[Cedillos] has contacted our office and would like to invite you in to mediation. . . . Please contact our office . . . by Friday, November 9, 2012 for more information."  In reply, Masumoto's attorney declared that Cedillos previously stated, "mediation will be an exercise of futility," in an e-mail dated October 1, 2012, which was prior to the district court's October 15, 2012 order requiring mediation.  The district court denied Masumoto's motion on November 13, 2012.

At a hearing on November 26, 2012, the district court denied Cedillos's motion for reconsideration and motion for sanctions.  The district court also noted that 45 days had passed since Masumoto issued the October 6, 2012 eviction notice.  On November 27, 2012, Masumoto filed a motion for leave to file a summary possession counterclaim, asserting that

11

Cedillos had not yet vacated the property despite the 45-day notice terminating the lease, and that Cedillos had not paid any rent required under the lease. Cedillos's written opposition to the motion focused on Masumoto's failure to pick up the November rent envelope, stated that he would bring the returned certified mail to court on December 10, 2012, and asserted that because Masumoto's rental unit was "illegal," she could not avail herself of legal remedies. In his opposition, Cedillos did not specifically challenge the 45-day notice terminating the lease based on the fact that it was issued after he notified Masumoto of various violations of the Landlord-Tenant code and filed and served his district court complaint against Masumoto for those violations; he did, however, assert: "[T]here is no new evidence or cause to grant [Masumoto's] motion. Circumstances have not changed since the denial by this court of the original non-hearing motion . . . ." The district court granted the motion on December 10, 2012, and set a hearing on various pre-trial motions and trial on possession for January 7, 2013. The hearing and trial proceeded as scheduled.

At the hearing preceding the trial, the district court heard arguments on three motions filed by Cedillos (Motion for Alternative Dispute Resolution, Motion for Pre-Trial Admission of Evidence, and Motion to Compel Discovery) and a Motion to Compel filed by Masumoto. Without providing any specific

12

rationale on the record, the court denied each of the motions. The court also granted Masumoto leave to submit a request for attorney's fees associated with defending against Cedillos's three motions.

At trial, Masumoto's attorney called as witnesses Masumoto and another tenant of a unit near the property. Cedillos, pro se, called Masumoto as a witness. Cedillos questioned Masumoto about the $25 per month rental increase beginning September 2012, and the court accepted Exhibit 4, which contained an e-mail communication between Cedillos and Masumoto about the rent increase, into evidence. When Cedillos attempted to submit evidence with respect to whether Masumoto agreed to compensate Cedillos for purchasing and pouring caustic soda into the cesspool, the court and Cedillos had the following colloquy:

> THE COURT: What's the relevance?
> [CEDILLOS]: As far as rent, rental payments[?]
> THE COURT: You understand the issue in this case is you didn't pay November rent in a timely fashion.
> [CEDILLOS]: Yes, I do, your Honor. But I'm still a little confused[.]
> THE COURT: Okay, so.
> [CEDILLOS]: [B]ecause [Masumoto's attorney] indicated at the outset that there's two separate issues here, and we're only concentrating on whether or not rent was paid for the unit and/or if the 45 day notice was, in fact, legal.
> We're only concentrating on whether rental payments were, in fact, made in a timely manner, then I'll confine my questioning to that. But I think that the issues [. . .] the issues are intertwined and you can't really separate them if the Court is going to consider whether or not her 45 day notice to me was, in fact, legal.
> THE COURT: All right. I don't see what the problem is or the confusion. It's either you did or didn't pay the November rent in a timely fashion; and secondly, whether or

13

> not notice was given to you.  So I don't know why showing
> me evidence of payments and correspondence concerning rent
> and deductions for January 2012 is relevant to that issue.
>           [CEDILLOS]: Okay.  So the issue that the Court is
> considering is whether or not I, in fact, did pay rent in a
> timely manner, and as counsel and as [Masumoto] has putting
> forth, that the reason for the counterclaim is because of
> nonpayment of rent.
>           THE COURT:  Okay.  You sat through her testimony this
> morning; right?
>           [CEDILLOS]: Correct.
>           THE COURT:  And the testimony that came out from the
> witness was that you didn't timely pay November 2012's
> rent; right?
>           [CEDILLOS]: Okay.  Yes.
>           THE COURT:  So that's the basically the thrust of her
> testimony.
>           [CEDILLOS]: All right.  There were issues brought up,
> your Honor, concerning repairs made.  Is the Court
> considering that?
>           THE COURT:  Not at this time.  That's not relevant to
> the issue of possession as far as the Court's concerned for
> today.

Ultimately, of the nine exhibits identified on Cedillos's

exhibit list, only two pages of Exhibit 1 (cancelled rental

checks for September and October 2012) and Exhibit 4

(communication regarding the $25 monthly rental increase) were

admitted.  At the end of Cedillos's case-in-chief the court and

Cedillos exchanged the following:

> [CEDILLOS]: No more witnesses, your Honor.
> THE COURT:  Okay.  Are you going to be testifying?
> [CEDILLOS]: No, your Honor.  I'd like to rest on my
> declarations and the exhibits I've submitted in my answer
> and all previous filings.  Unless [Masumoto's attorney]
> wants to call me as a witness.
> THE COURT:  You had questions you want to ask him?
> [MASUMOTO'S ATTORNEY]:  No.
> THE COURT:  Okay.  So the Court will take the matter
> under advisement.  Give the Court an opportunity to review
> the exhibits that were submitted to the Court.
>                   Court will continue the matter to January
> 14 at 10:00 o'clock a.m. for ruling by the Court on the
> issue of possession.

14

On January 14, 2013, the district court ruled in favor of Masumoto, stating that Masumoto was "entitled to the property" and ordering the issuance of a writ of possession and judgment for possession. Cedillos requested a stay of the writ, which was denied. The writ and judgment for possession issued on January 17, 2013, and a status conference was set for February 11, 2013.

Masumoto filed "Defendant's Declaration in Support of Fees" on January 14, 2013. On January 23, 2015, the district court issued a Judgment against Cedillos awarding Masumoto $1,755.00 in attorney's fees "based upon the Court denying Plaintiff's Motions for Alternative Dispute Resolution, Motion for Pre-Trial Admission of Evidence and Motion to Compel Discovery." Both the January 23 Judgment and Masumoto's attorney's Declaration in Support of Fees failed to indicate the legal basis for fees.

After granting Cedillos's non-hearing motion for findings of fact and conclusions of law, the district court filed its "Findings of Fact, Conclusions of Law, Decision and Order" on January 31, 2013. The Findings of Fact state in the entirety:

> 1. [Masumoto] is the owner of property located at 271 Makaena Street, Makawao, Maui, Hawai'i ("the Subject Property").
> 2. [Masumoto] was the landlord, and [Cedillos] was the tenant, of the Subject Property pursuant to a Rental

15

Agreement dated November 1, 2011 (Defendant's Exhibit A).

3. Pursuant to the terms of the Rental Agreement, the rental term commenced on December 1, 2011, and ended on May 31, 2012, after which the Rental Agreement would automatically convert to a month-to-month tenancy.  Rent was $800.00/month.

4. Within two (2) days of the written notice dated October 5, 2012, [Masumoto] hand delivered [Cedillos] a 45-day notice to vacate the Subject Property (Defendant's Exhibit C).

5. Defendant testified that she did not receive rent from Plaintiff for the month of November 2012.

6. By letter dated November 26, 2012, counsel for [Masumoto] informed [Cedillos] that he was in default of rent for November, 2012, specifically, the time period of November 1-20, 2012 (Defendant's Exhibit D).  [Cedillos] was also informed that if he did not believe that the rental agreement had been terminated via the written notice dated October 5, 2012, he was required to pay [Masumoto] the amount of rent in default in five (5) business days otherwise the rental agreement would be terminated.

7. In response to [Cedillos's] claim that he had mailed November's rent to [Masumoto] (which [Masumoto] testified that she never received in the mail) on October 30, 2012, counsel for [Masumoto] informed [Cedillos] to make payment to counsel for [Masumoto] within five (5) business days from November 26, 2012 (Defendant's Exhibit E).

8. [Masumoto] testified that to date, she has not received rent for the month of November 2012.

9. The Court finds the testimony of [Masumoto] to be more credible than [Cedillos].

10. If any of the foregoing Findings of Fact are Conclusions of Law, they shall be so deemed.

The Conclusions of Law state in the entirety:

1. Section 521-71(a) f [sic] the Hawaii Revised Statutes ("HRS") states, in pertinent part:

> When the tenancy is month-to-month, the landlord may terminate the rental agreement by notifying the tenant, in writing, at least forty-five days in advance of the anticipated termination. . . .

2. The term of the Rental Agreement ended on May 31, 2012.  Thereafter, the Rental Agreement automatically converted to a month-to-month tenancy.

3. [Masumoto] notified [Cedillos] in writing, of the termination of the tenancy via notices dated October 5, 2012, and/or November 26, 2012.  Despite receiving said written notices, [Cedillos] continued to remain on the Subject Property.

16

4.  [Masumoto] is entitled to immediate possession of the
    Subject Property.
5.  If any of the foregoing Conclusions of Law are
    Findings of Fact, they shall be so deemed.

On January 25, 2013, Cedillos filed a motion for continuance of the February 11 status conference, explaining that he was "currently on O'ahu until February 19, 2013 [and was] unable to return before that date due to [his] father's illness who is currently in a care home." The district court denied the motion on February 5, 2013. By an e-mail dated February 8, 2013 to Masumoto's attorney, Cedillos stated: "[I] will not [be] deter[red] . . . from the appeal of the possession and the continuation of the retaliatory suit. . . . As you know Judge Kobayashi denied my request for a continuance and it will be impossible for me to be at hearing on Monday. I have not received or been able to pick up any mail to my po box since 1/20/13. I will not return until the 19th." At the February 11 status conference, Cedillos did not appear. Masumoto's attorney represented that Cedillos notified him that the district court had denied Cedillos's motion to continue the status hearing and that Cedillos presently lived on O'ahu. Pursuant to the court minutes, the court then stated that it "will dismiss [Cedillos's] claim with prejudice as to case-in-chief. Court will enter default on [Cedillos] as to the counterclaim." The

17

court minutes and court document summary do not indicate that default was actually entered by the district court.

After Cedillos filed a Notice of Appeal with the ICA in February 2013, see infra Part II.C., on March 6, 2013, Masumoto filed a Non-hearing Motion for Default Judgment. Masumoto's requested attorney's fees included fees already approved and granted by way of the January 23, 2013 Judgment. Masumoto's motion included a "Declaration Regarding Attorney's Fees and Costs" stating that the request for these fees was pursuant to "[HRS] § 607-14 (assumpsit)" and "[HRS] § 666-14 (summary possession)." The Notice of Motion stated: "Any response to this Motion must be in writing . . . and filed with the Court no later than . . . 12 days [from the date shown on the Certificate of Service below] when the Motion is mailed." The Motion was mailed to Cedillos on March 6, 2013.

On March 12, 2013, the district court granted the motion and entered Default Judgment in favor of Masumoto and against Cedillos for $16,439.30, where $2,813.67 was attributed to "Total Rent, Holdover & Damages," $373.13 to other filing and service fees, and $13,352.50 to attorney's fees. On March 13, 2013, a First Amended Judgment was filed, and listed the same award amount as the March 12, 2013 order. On March 18, 2013, Cedillos timely filed his response to Masumoto's Motion for Default Judgment. On March 22, 2013, both the March 6 Default

18

Judgment and March 13 First Amended Judgment were sua sponte set aside by the court as Cedillos's March 18 response was timely. No specific reference was made to the January 23, 2013 Judgment.

The record on appeal does not reflect further ruling on the issue of default or default judgment of claims raised in Cedillos's case-in-chief.[4]  Notably, the district court did subsequently issue orders denying Cedillos's Motion for Stay of Proceedings Pending Appeal and his Motion for Stay of Execution of Judgement Awards and Attorney Fees Pending Appeal.

## C.  Appeal to the ICA

Cedillos filed a Notice of Appeal on February 22, 2013.  Cedillos stated he wished to appeal from:

> the Judgment for Possession and Writ of Possession filed on January 17, 2013; Judgment filed on January 23, 2013; Findings of Fact, Conclusions of Law, Decision and Order filed January 31, 2013; Order Denying Plaintiff's Stay of Writ of Possession received by the court January 14 and filed January 31, 2013; Order Denying Plaintiff's Motion to Compel Discovery filed January 23, 2013; Order Granting Defendant's Motion For Leave to File Counterclaim filed unknown; Order Denying Plaintiff's Motion for Reconsideration filed December 7, 2013 and Order Denying Motion for Continuance filed January 25, 2013.

In his opening brief, Cedillos asserted five points of error by the district court:

> 1.    [The court e]rred in granting leave to [Masumoto] to bring a summary possession counter claim.
> 2.    [The court e]rred and abused its discretion in allowing the counterclaim for summary possession to

---

[4] There has been recent activity in the district court, however, that is not included in the record on appeal.  As reflected in the Hoʻohiki database for Case No. 2RC12-1-002171, Masumoto filed a "Motion for Entry of Default Judgment Against Plaintiff" on September 8, 2015.  A hearing on the motion occurred on October 19, 2015.  A status hearing is set for December 21, 2015.

> be heard before [Cedillos's] original underlying claim of retaliatory eviction was adjudicated and in bifurcating and refusing to consider [Cedillos's] affirmative defenses to the possession counterclaim. The original complaint and defenses directly affected [Cedillos's] right of possession and would have precluded [Masumoto] from recovering possession.
> 3. [The court e]rred in not establishing a rental trust fund pursuant to HRS 521-78.
> 4. [The court e]rred in granting summary possession and finding and concluding that [Cedillos] did not pay rent for November 2012.
> 5. [The court e]rred in denying a stay of the writ of possession.

(citations omitted). Cedillos did not present any specific argument with respect to the district court's entry of Judgment dated January 23, 2013 for attorney's fees related to certain pre-trial motions.

The ICA found each of Cedillos's five contentions to be without merit.

As to the first point of error, the ICA stated that Cedillos "failed to provide any argument as to how the [d]istrict [c]ourt abused its discretion in allowing [Masumoto] to file a counterclaim or state how he was prejudiced when the [d]istrict [c]ourt allowed the counterclaim to be filed." Cedillos v. Masumoto, No. CAAP-13-0000107, at 2 (App. May 27, 2015) (SDO).

With respect to the second issue, the ICA noted that "[c]ontrary to Cedillos's contention, the [d]istrict [c]ourt did not prevent him from presenting evidence of retaliatory eviction as a defense to [Masumoto]'s claim for possession." Id.

20

Further, citing to KNG Corp. v. Kim, 107 Hawaiʻi 73, 79 n.10, 110 P.3d 397, 403 n.10 (2005), the ICA concluded the district court "did not abuse its discretion by adjudicating Masumoto's summary possession claim prior to considering Cedillos's complaint." Cedillos, SDO at 3.  The ICA observed that Cedillos did not present any evidence of retaliatory eviction under HRS § 521-74, and that any repairs made by Cedillos "were [already] resolved to Cedillos's satisfaction."  Id. at 4.

The ICA found the third issue to be without merit because Cedillos's request for a rent trust fund that also required Masumoto to deposit money into it was not required under the law.  Id. (citing HRS § 521-78(a) (2006)).

As to the fourth issue, the ICA concluded that any error by the district court with respect to finding that Cedillos did not pay November 2012 rent was harmless because Cedillos did not properly leave the premises in accord with the forty-five-day notice to vacate.  Id. at 5.

Lastly, with respect to whether the district court erred by denying Cedillos's motion to stay the writ of possession, the ICA noted the record was bare of transcripts of the hearing at which the court orally denied Cedillos's request, and therefore there was no support for Cedillos's assertion that the district court refused to hear arguments with respect to the motion to stay.  Id.  The ICA also noted that Cedillos was not

21

entitled to a stay because he did not comply with the requirements of HRS § 666-14 (1993), which requires that Cedillos actually pay Masumoto for past due rent, including interest, and costs and expenses related to the summary possession proceedings prior to the issuance of the writ in order to obtain a stay.  Id. at 6.

Based on the foregoing, the ICA affirmed "the [d]istrict [c]ourt's Judgment for Possession and Writ of Possession, both filed on January 17, 2013."  Id.  The ICA did not address the Judgment dated January 23, 2013.
The three questions raised by Cedillos in his Application relate to issues 4, 2, and 3, respectively, as addressed by the ICA.

### III.  Standards of Review

**A.  Questions of Law**

Questions of law are reviewed upon appeal under the right/wrong standard of review.  Maile Sky Court Co. v. City & Cnty. of Honolulu, 85 Hawai'i 36, 39, 936 P.2d 672, 675 (1997) (citation omitted).

**B.  Interpretation of a Statute**

"'The interpretation of a statute is a question of law reviewable de novo.'"  Ka Pa'akai O Ka'aina v. Land Use Comm'n, 94 Hawai'i 31, 41, 7 P.3d 1068, 1078 (2000) (quoting Amantiad v. Odum, 90 Hawai'i 152, 160, 977 P.2d 160, 168 (1999)).

22

## IV. Discussion

As a preliminary matter, the following facts were undisputed at trial:

1.     As of June 1, 2012, Cedillos was on a month-to-month tenancy of the property.

2.     On August 2, 2012, Masumoto notified Cedillos that monthly rent for the property would increase by $25 as of September 1, 2012.

3.     On August 6, 2012, Cedillos contested the rent increase with Masumoto as forty-five-days' notice was not provided as required by HRS § 521-21.  Cedillos also tendered an invoice to Masumoto for work performed on the property.

4.     As of August 28, 2012, Masumoto continued to demand that the rent due in September 2012 include the $25 increase.  Masumoto also had not yet responded to Cedillos's request to be reimbursed for tendered invoices.

5.     Cedillos timely tendered rent payments in the amount of $825 to Masumoto for September 2012 and October 2012.

6.     On October 1, 2012, Masumoto notified Cedillos that she wanted him to leave in 30 days.

7.     On October 5, 2012, Cedillos filed a complaint in district court, alleging among other things that Masumoto violated HRS § 521-53 (2006) (requiring "at least two days

23

notice of the landlord's intent to enter"), HRS § 521-21 (2006) (requiring "written notice given forty-five consecutive days prior to the effective date of [any rent] increase" for month-to-month tenancies), and HRS § 521-74 (prohibiting retaliatory evictions and rent increases).

8.    Also on October 5, 2012, Masumoto was served with Cedillos's complaint.

9.    On October 6, 2012, Masumoto issued a forty-five-day eviction notice to Cedillos, terminating the lease as of November 20, 2012.

10.    On October 30, 2012, Cedillos submitted his November rent to Masumoto at her P.O. Box via USPS certified mail.

11.    As of November 19, 2012, the November rent envelope was not picked up by Masumoto.  It was then returned by USPS to Cedillos, who received it on November 29, 2012.

12.    On November 27, 2012, Cedillos received Masumoto's "Five-Day Notice to Pay Rent or Quit [Premises]."  The notice required Cedillos to pay November rent within "five . . . business days of receipt of this notice / posting," else the "rental will be terminated."[5]  Five business days from November 27, 2012 was December 4, 2012.

---

[5] The district court made no finding with respect to the date Cedillos received the "Five-day Notice to Quit" letter.  Rather, the court found: "By letter dated November 26, 2012, counsel for [Masumoto] informed [Cedillos] that he was in default of rent for November, 2012, . . . ."  The date of
(continued . . .)

24

13.    By December 4, 2012, Masumoto had received and cashed a check from Cedillos in the amount of $825.

14.    On or around December 12, 2012, Masumoto's attorney received the November rent envelope from Cedillos.

15.    Masumoto's attorney handed the November rent envelope to Masumoto on January 7, 2013, the date of trial.

The sequence of events is important because it impacts whether various statutory rights and obligations under the Residential Landlord-Tenant Code, HRS Chapter 521 ("Landlord-Tenant Code"), are triggered.  The following discussion examines the issues raised by Cedillos in the order he presents them in his Application: (1) whether the ICA erred in determining that the trial court's determination that Cedillos was required to vacate due to his failure to pay November rent was harmless error, (2) whether the ICA erred in determining that the trial court did not err in the manner in which it handled the trial such that Cedillos was prevented from presenting evidence relating to repairs, and (3) whether the ICA erred in affirming

_____

(. . . continued)
actual receipt of the notice, as opposed to the date of issuance, is the date from which the five-business-day period commences.  See HRS § 521-68(a) ("A landlord . . . may, any time after rent is due, demand payment thereof and notify the tenant in writing that unless payment is made within a time mentioned in the notice, not less than five business days after receipt thereof, the rental agreement will be terminated." (emphasis added)).

the trial court's denial of Cedillos's request to set up a rental trust fund.

## A. The Forty-five-day Notice to Vacate

The record shows that it is undisputed that at a minimum, Cedillos was current on his rent payments through October 31, 2012. The record also shows that on October 5, 2012, Cedillos filed his complaint alleging Masumoto violated various sections of HRS Chapter 521 — including issuing an eviction notice on October 1, and raising his monthly rent by $25, both without adequate notice — and served Masumoto with the complaint the same day. Thus, the filing and service of the complaint occurred <u>prior</u> to Cedillos being served on October 6, 2012 with Masumoto's 45-day notice to vacate.

HRS § 521-74(a) states in relevant part:

> [S]o long as the tenant continues to tender the usual rent to the landlord . . . , the landlord [shall not] otherwise cause the tenant to quit the dwelling unit involuntarily . . . after:
>     (1)  The tenant has complained in good faith to the . . . landlord, . . . or any other governmental agency[6]

---

6  The legislature, in amending HRS § 521-74 to include complaints to "the landlord, . . . or any . . . governmental agency," stated:

> The provisions of section 521-74 are expanded by prohibiting the landlord from evicting or raising the rent of a tenant who has complained in good faith to the landlord, building department, Office of Consumer Protection, or any other governmental agency. Presently, the landlord is prohibited from raising the rent or evicting a tenant who has complained to the Department of Health. This section is expanded because there exists other problems not restricted to health which could lead to these actions following a dispute between the landlord and tenant.

(continued . . .)

> concerned with landlord-tenant disputes of conditions in or affecting the tenant's dwelling unit which constitutes a violation of . . . any provision of this chapter . . . .

In sum, pursuant to HRS § 521-74, a tenant need not demonstrate actual retaliation.  Rather, absent certain exceptions, so long as the tenant continues to submit rent, once a tenant has "complained in good faith" to the landlord or a governmental agency, the landlord is expressly prohibited from (1) maintaining an action or proceeding to recover possession of the premises, (2) otherwise causing the tenant to quit involuntarily, (3) raising the tenant's rent, and (4) decreasing the services to which the tenant is entitled.  See HRS § 521-74.

By concluding that "[d]espite receiving [the] written notice[] [to vacate on October 6, 2012], [Cedillos] continued to [improperly] remain on the Subject Property," the district court determined as a matter of law that the October 6, 2012 notice was valid, and that Cedillos's failure to comply and vacate the Property was grounds for granting Masumoto a writ and judgment for possession as a matter of law.  To arrive at this determination, the district court implicitly determined that HRS § 521-74 did not apply to alter the legal efficacy of the October 6, 2012 notice.  We examine this issue, beginning with whether Cedillos's complaint was submitted in good faith.

_____

(. . . continued)
Conf. Comm. Rep. No. 3, in 1975 House Journal, at 869, 1975 Senate Journal, at 827.

Cedillos's complaint had alleged various violations of the Landlord-Tenant Code.  The allegations included that Masumoto: (1) raised Cedillos's rent without giving the statutorily required 45-day's notice; (2) Masumoto had failed to respond to Cedillos's request for reimbursement for repairs done on the property; and (3) on October 1, 2012, had given him only thirty days' notice of eviction in violation of HRS § 521-71.  At trial, Masumoto testified as to the first and third matters, acknowledging: (1) that on August 2, 2012, she imposed a $25 rent increase beginning September 1, 2012;[7] and (2) that she had "ask[ed] . . . Cedillos to move out in 30 days" on October 1.  There was no submission of evidence regarding payment for repairs as the court declined to consider that issue.

Thus, Masumoto acknowledged by her own trial testimony, which the district court credited, that she gave Cedillos insufficient notice of both the $25 rent increase and initial request to vacate.  These facts together with Cedillos's continued timely rent payments, leave no room to dispute whether Cedillos's complaint, which was filed in district court and served on Masumoto on October 5, 2012 (prior to Cedillos's

_____

[7]  Masumoto also testified that Cedillos agreed that despite her giving him less than the statutorily mandated amount of notice prior to the rent increase, "he would agree to pay a higher rent amount of $25.00 per month" as of October 1 so long as she paid his submitted repair invoices.[7]  However, the record is bare as to whether Cedillos and Masumoto had resolved the rent increase issue prior to the filing of his complaint because the court declined to consider the issue of payment for repairs.

receipt of a 45-day notice to vacate), was made in good faith, thereby satisfying HRS § 521-74(a)(1).[8] Accordingly, when Masumoto issued her October 6, 2012 45-day notice to vacate to Cedillos, HRS § 521-74(a) rendered the notice ineffective because Masumoto was prohibited from "caus[ing] . . . [T]enant to quit the dwelling unit involuntarily."[9]

Cedillos has consistently argued before the district court, ICA, and this court, that the October 6, 2012 notice to vacate was "illegal." For example, in Cedillos's "Response and Declaration in Support of Denial of Defendant's Motion for Leave to File Counterclaim" dated October 29, 2012, Cedillos argued, "The current, and latest, notice of eviction was dated October 6, 2012. Only if, and when, [Cedillos] has overstayed the deadline of any legal eviction notice and post-deadline notices, will [Masumoto] have any actionable cause for summary possession." In his opening brief before the ICA, Cedillos elaborated on the issue of the timing of a landlord's notice of

---

[8] Cedillos's August 6, 2012 letter to Masumoto would also appear to satisfy the requirements of HRS § 521-74(a)(1), as Masumoto's testimony also corroborates Cedillos's allegations of improper notice as to the rent increase.

[9] Additionally, the exception identified in HRS § 521-74(b)(7), did not apply to Masumoto. See HRS § 521-74(b)(7) ("Notwithstanding subsection (a), the landlord may recover possession of the dwelling unit if . . . [t]he landlord is seeking to recover possession on the basis of a notice to terminate a periodic tenancy, which notice was given to the tenant previous to the complaint or request of subsection (a)." (emphasis added)).

29

termination with respect to a tenant's complaint against a landlord:

> [T]he record is clear that [Masumoto] had <u>already</u> violated HRS 521-21 concerning rent increases as detailed in Argument #1. Both HRS 521-74(a)(1) and HRS 521-71(f) restricted [Masumoto's] right to issue a notice of termination and sue for possession.  Consider the result should this court . . . agree with the district court . . . .  The implication would lead to an open house on tenants who initiate statutory Code proceedings against a landlord and then continue to timely pay rent to the landlord in a most proof positive and secured manner [certified mail] only to have the landlord knowingly refuse to collect. [The] [l]andlord then falsely claims non payment of rent and sues for possession.

(Emphasis in original).

Accordingly, as consistently argued by Cedillos, the October 6, 2012 45-day notice to vacate was invalid because it was issued while Cedillos was current with his rent payments, and after Cedillos filed a complaint in good faith in district court and served it on Masumoto.  No other 45-day notice to vacate was issued following Cedillos's alleged failure to pay November rent.

Thus, the ICA erred in concluding that even if the district court erred in determining that Cedillos failed to pay rent for November 2012, that such error was harmless because Masumoto was entitled to summary possession pursuant to the 45-day notice to vacate and Cedillos's "fail[ure] to establish retaliatory eviction."  <u>Cedillos</u>, SDO at 5.

First, such error would not have been harmless, as there was no basis to grant summary possession to Masumoto

pursuant to the October 6, 2012 45-day notice, which was filed after the October 5, 2012 good-faith complaint.  Additionally, to the extent the ICA faulted Cedillos for failing to "testify []or present other evidence that he made a complaint that constituted a violation of a health law, regulation, or any provision of HRS Chapter 521," the ICA's observation is inaccurate for two reasons.  One, the court proceeding was itself initiated by Cedillos's October 5, 2012 complaint that alleged violations by Masumoto of HRS Chapter 521, and therefore a copy of the complaint was not required to have been submitted as evidence for the purpose of determining the validity of the October 6, 2012 45-day notice.  And two, Exhibit 4, which was admitted into evidence by the district court, included pre-October 6, 2012 communications between Cedillos and Masumoto, indicating that Cedillos complained to Masumoto about her violations of the Landlord-Tenant code, including the lack of requisite notice prior to the increase in rent and Cedillos's request for reimbursement for required repairs.

Second, to clarify, the ICA's reference to Windward Partners v. Delos Santos, 59 Haw. 104, 117, 577 P.2d 326, 334 (1978), when concluding that Cedillos had the "burden of proving retaliatory eviction under HRS § 521-74 by a preponderance of the evidence," was misplaced.  That case concerned the use of the affirmative defense of retaliatory eviction in equity, and

31

not pursuant to HRS § 521-74.  See id. at 114, 577 P.2d at 333 (concerning alleged retaliation by landlord for tenant's exercise of rights outside the Landlord-Tenant code).

**B. The Five-Day Notice to Pay Rent or Quit Premises Based on Cedillos's Alleged Failure to Pay November 2012 Rent**

The ICA did not directly address Cedillos's fourth point of error: "The district court . . . [e]rred in granting summary possession and finding and concluding that [Cedillos] did not pay rent for November 2012."  (citation omitted).  Instead, as previously noted, the ICA concluded any such error was harmless as Masumoto "was entitled to possession of the premises, regardless of whether [Cedillos] tendered or paid rent for November 2012" pursuant to the October 6, 2012 45-day notice to vacate.  As discussed supra Part IV.A., the ICA erred in so concluding.  The record compels a contrary result.

Cedillos accurately pointed out to the ICA that the district court's finding of fact #8, "[Masumoto] testified that to date, she has not received rent for the month of November 2012," is clearly erroneous.  Indeed, Masumoto testified that as of the date of the hearing, she was in receipt of the November rent envelope and that her attorney had the November rent envelope in his possession since on or about December 12, 2012.

Further, even if this court were to disregard the fact that the November rent envelope sat for nearly three weeks at

32

the post office housing Masumoto's post office box, uncollected by Masumoto, Cedillos properly tendered rent in compliance with Masumoto's five-day notice. Although the five-day notice demanded $950 for November rent, the district court determined that "[r]ent was $800.00/month" and made no findings with respect to the effect of lawn maintenance on the rent amount. Neither party challenged this finding. By the fifth-business-day deadline, December 4, 2012, Masumoto had received a check from Cedillos in the amount of $825 and deposited it. Accordingly, it appears Cedillos timely satisfied the rent demanded in the five-day notice.

The district court, however, did not make this finding. Instead, it emphasized that Masumoto did not receive rent for November 2012.[10] Thus, presumably the court determined as a matter of fact that the check deposited on December 4, 2012 applied to December rent. With the money going toward December rent, it would appear that Cedillos remained in default and subject to eviction because Masumoto did not receive November

_____

[10] We note that Hawai'i Rules of Evidence Rule 303 states:

> A presumption established to . . . facilitate the determination of the particular action in which the presumption is applied imposes on the party against whom it is directed the burden of producing evidence. . . . [One such presumption is that] [t]he payment of earlier rent or installments is presumed from a receipt for later rent or installments[.]

HRE Rule 303(a), (c)(5). The presumption does not apply in this case because Cedillos informed the court that the rent received by Masumoto in December was for the "December rental payment."

rent by the five-day deadline of December 4.  Indeed, this is what Masumoto's attorney appeared to assert during trial when examining Masumoto.

> Q.    . . . You received December's rent in December from
>        [Cedillos]; correct?
> A.    Yes.
> Q.    And the first time you received November's rent was .
>        . . basically today when your attorney handed you.
> A.    Right, right, today.

Yet, even if this were the case, Masumoto would still not be entitled to summary possession based on the five-day notice as a matter of law.

As a preliminary matter, because summary possession proceedings cannot be initiated until after the expiration of the five-day notice period and termination of the agreement, Masumoto did not "bring" any legal proceedings against Cedillos until December 10, 2012, when the district court granted her leave to file a claim for summary possession.  See HRS § 521-68(a) (2006) ("A landlord . . . may, any time after rent is due, demand payment thereof and notify the tenant in writing that unless payment is made within a time mentioned in the notice, not less than five business days after receipt thereof, the rental agreement will be terminated. . . .  If the tenant remains in default, the landlord may thereafter bring a summary proceeding for possession of the dwelling unit or any other proper proceeding, action, or suit for possession." (Emphasis added)).  Thus, HRS § 666-5 (1993), did not apply to Masumoto at

34

the time she accepted Cedillos's check on December 4, 2015 and does not affect how the court construes that payment.  The statute provides:

> When any legal proceedings are brought by a landlord to evict a tenant, whether by summary possession proceedings or an action in the nature of an action of ejectment or otherwise, the acceptance of rent by the landlord during the litigation shall not be construed as a recognition of the tenancy and shall be without prejudice to the landlord's legal rights at the inception of the proceedings.
> In the event the eviction proceedings of whatever nature are successful any rent so paid shall be construed as damages for withholding the occupancy of the premises involved from the landlord.

HRS § 666-5 (emphasis added).  Accordingly, any payments made by Cedillos to Masumoto prior to December 10, 2012 can be construed as Masumoto's recognition of some form of tenancy.

Here, pursuant to the five-day notice, the rental agreement would not terminate until after December 4, 2012, i.e., December 5, 2012.  See HRS § 521-68(a).  Thus, as of December 4, 2012, when Masumoto accepted Cedillos's check for "December rent" and deposited it, the rental agreement was still in effect.  By accepting Cedillos's rental payment, Masumoto extended his periodic tenancy through at least December 31, 2015.  Therefore, although Masumoto may not have waived her right to collect rent for November 2012, she did waive her right to evict Cedillos — based on Cedillos's alleged failure to pay November rent by December 4, 2012 — during the extended tenancy

under the existing rental agreement.[11]  Further, on December 12, 2012, during the continued tenancy, Masumoto, through her attorney, received the November rent envelope, thus resolving any issues of late rent and leaving no cause of action for Masumoto to pursue under HRS § 521-68.

Thus, regardless of whether the rent check deposited by Masumoto on December 4, 2012 was applied to November rent or December rent, Masumoto was not entitled to summary possession based on Cedillos's alleged failure to pay November rent.

## C.  Whether the District Court Erred in Its Handling of the Trial

The ICA correctly stated that "'[t]he court has the discretion in a summary possession case to sever the issue of a determination of the landlord's right to summary possession from other issues.'"  Cedillos, SDO at 2 (quoting KNG Corp., 107 Hawai'i at 79 n.10, 110 P.3d at 403 n.10).  Indeed, that the district court first set trial for summary possession was not illogical.  If Cedillos had failed to pay rent and the rental agreement was accordingly terminated, HRS § 521-74 (retaliatory

_____

[11] Notably, as of the date of trial, Masumoto had received a $825 rent payment for January 2013.  According to an image of the cashed January 2013 check, which was submitted as an exhibit attached to a post-trial motion, the check was deposited on January 4, 2013, prior to trial.  Although HRS § 666-5 applies to the January payment (because it was made after Masumoto filed her summary possession counterclaim), it has no practical effect on how the payment is construed.  This is because Masumoto had no "legal right" to evict Cedillos based on either his rental payment history or the 45-day notice to vacate delivered to Cedillos on October 6, 2012.  Accordingly, Masumoto's acceptance of the January 2013 rent payment further extended Cedillos's periodic tenancy under the rental agreement.

36

eviction) would not be at issue because the statute applies only to those tenants who "continue[] to tender the usual rent"; therefore, a determination that Masumoto was entitled to summary possession for Cedillos's failure to pay rent could then follow. Similarly, if Cedillos had timely tendered rent, Masumoto would not be entitled to summary possession.  See supra Parts IV.A—B.

Some of the issues raised by Cedillos in his complaint directly related to both whether November rent was timely paid, and whether he met the elements of HRS § 521-74 thereby prohibiting his eviction.  For example, at trial Cedillos attempted to submit evidence "concern[ing] repairs made and/or reported, that went unresolved and unpaid," but such attempts were limited or denied by the district court.  Cedillos had billed Masumoto for such repairs on August 6, 2012, yet as of August 28, 2012, the cost of the repairs had not been credited to Cedillos's rent.  This is relevant to: (1) Cedillos's affirmative defense under HRS § 521-74 that Masumoto's October 6, 2012 notice to vacate was issued in retaliation for Cedillos's request for reimbursement for property repairs; and (2) the amount of rent for November 2012 required of Cedillos by the end of the five-day-pay-or-quit period, if any, if offsets for repairs were considered.  Thus, the district court abused its discretion when it determined that it would not consider evidence of communication regarding "repairs made" as that issue

37

was "not relevant to the issue of possession as far as the Court's concerned for today."

In his second point of error before the ICA, Cedillos challenged this decision of the district court.[12] The ICA's conclusions with respect to this issue, however, which were based on the district court's discretion, were erroneous. The district court's discretion in deciding the order in which it addresses claims raised in a landlord-tenant dispute does not permit it to preclude Cedillos from presenting evidence that is relevant to both Masumoto's summary possession counterclaim and Cedillos's own claims filed on October 5, 2012. Indeed, the district court appeared to steer Cedillos into only offering evidence regarding actual payment of rent or receipt of the forty-five-day notice to vacate. For example, in response to Cedillos expressing confusion as to why he could not present evidence regarding "whether or not [the] 45 day notice . . . was, in fact, legal," an apparent affirmative defense unrelated to the testimony presented by Masumoto, the court stated, "I

---

[12] 2. The district court . . . [e]rred and abused its discretion in allowing the counterclaim for summary possession to be heard before [Tenant's] original underlying claim of retaliatory eviction was adjudicated and in bifurcating and refusing to consider [Tenant's] affirmative defenses to the possession counterclaim. The original complaint and defenses directly affected [Tenant's] right of possession and would have precluded [Landlord] from recovering possession.

(Emphasis added).

don't see what the problem is or the confusion. It's either you did or didn't pay the November rent in a timely fashion; and secondly, whether or not notice was given to you." Additionally, the district court did not clearly state whether it would consider the exhibits attached to certain of Cedillos's pre-trial filings.

Accordingly, the ICA incorrectly noted that "[c]ontrary to [Cedillos's] contention, the [d]istrict [c]ourt did not prevent him from presenting evidence of retaliatory eviction as a defense to [Masumoto's] claim for possession." Cedillos, SDO at 2. Indeed, the ICA's observation — that "while there was some evidence introduced that repairs were made to the property, the record demonstrates that those issues were resolved to [Cedillos's] satisfaction" — demonstrates why the district court's refusal to admit Cedillos's evidence or to clarify that some or all of Cedillos's exhibits and declarations submitted pre-trial was error: the ICA's observation was wholly based on evidence submitted by Masumoto, with no consideration of Cedillos's evidence because none was specifically admitted at trial. Cedillos, SDO at 4 (referring to Exhibits F and Q).

For the foregoing reasons, the ICA erred in determining that the district court did not prevent Cedillos from fully presenting evidence (specifically evidence about

39

repairs) for the court's consideration on the issue of summary possession.

## D. Whether the ICA Erred In Affirming the District Court's Decision to Deny the Establishment of a Rent Trust Fund

In his October 5 complaint, Cedillos requested the "establishment of a rental trust fund, pursuant to HRS § 666-21, in which the court shall direct [Masumoto] to deposit all disputed rental overpayments and for [Cedillos] to deposit future rental payments to be secured by the court until all litigation has concluded in this case."  (Emphasis added).  The district court denied both the initial request and Cedillos's motion for reconsideration of that denial.  The record is bare as to the court's reasons for denying Cedillos's request. Notably, however, the court's minutes focused on Cedillos's request that Masumoto deposit alleged overpayments into the fund: "[Cedillos's] request for [Masumoto] to deposit monies into rental trust fund denied by court."

HRS § 666-21 (1993) and HRS § 521-78 (2006) are identical and provide:

> (a)  At the request of either the tenant or the landlord in any court proceeding in which the payment or nonpayment of rent is in dispute, the court shall order the tenant to deposit any disputed rent as it becomes due into the court as provided under subsection (c), and in the case of a proceeding in which a rent increase is in issue, the amount of the rent prior to the increase; provided that the tenant shall not be required to deposit any rent where the tenant can show to the court's satisfaction that the rent has already been paid to the landlord; provided further that if the parties had executed a signed, written instrument agreeing that the rent could be withheld or deducted, the

> court shall not require the tenant to deposit rent into the fund. No deposit of rent into the fund ordered under this section shall affect the tenant's rights to assert either that payment of rent was made or that any grounds for nonpayment of rent exist under this chapter.
> . . .
> (c) The court in which the dispute is being heard shall accept and hold in trust any rent deposited under this section and shall make such payments out of money collected as provided herein. The court shall order payment of such money collected or portion thereof to the landlord if the court finds that the rent is due and has not been paid to the landlord and that the tenant did not have any basis to withhold, deduct, or otherwise set off the rent not paid. The court shall order payment of such money collected or portion thereof to the tenant if the court finds that the rent is not due or has been paid, or that the tenant had a basis to withhold, deduct, or otherwise set off the rent not paid.

HRS §§ 521-78, 666-21.

Thus, the ICA did not err in stating: "The plain language of HRS § 521-78 allows the [d]istrict [c]ourt to order a tenant, not a landlord, to deposit disputed rent into the rent trust fund." Cedillos, SDO at 4. Accordingly, neither HRS § 521-78 nor HRS § 666-21 require the district court to "establish[] . . . a rental trust fund, pursuant to HRS 666-21, in which the court shall direct [Masumoto] to deposit all disputed rental overpayments and for [Cedillos] to deposit future rental payments to be secured by the court until all litigation has concluded in this case." (Emphasis added). Although the district court could have exercised its discretion to grant in part Cedillos's request, and require that his rent payments be deposited with the court, Cedillos's memorandum in

41

support for his motion for reconsideration shows that Cedillos's primary concern was over Masumoto's payments, not his own.

Given the limitations of the record and the nature of Cedillos's request in the conjunctive, it does not appear that the ICA erred in affirming the district court's denial of the establishment of a rent trust fund for the purposes requested by Cedillos.

**E.   Judgment dated January 23, 2013 Relating to Attorney's Fees Associated with Certain Pre-trial Motions**

The February 22, 2013 Notice of Appeal filed by Cedillos identified the "Judgment filed on January 23, 2013" as one of the district court judgments or orders from which he was appealing to the ICA.  Although the district court had initially granted the motion on March 12, 2013, and filed a First Amended Judgment on March 13, 2013, it subsequently sua sponte set aside those judgments.  In his August 25, 2013 opening brief before the ICA, Cedillos noted that it was his understanding that Masumoto's March 6, 2013 Non-hearing Motion for Default Judgment sought "to amend the Judgment dated January 23, 2013" in addition to seeking allegedly unpaid rent.  He also argued that since the district court failed to rule on the motion following the filing of his timely opposition, that the motion was deemed denied pursuant to HRAP Rule 4(a)(3).  The ICA did not address the January 23, 2013 Judgment in its SDO.

42

Although Cedillos's Application does not raise a specific issue regarding the January 23, 2013 Judgment, the Judgment should nevertheless be vacated.  Neither Masumoto's "Declaration in Support of Fees" or the January 23, 2013 Judgment reflect the legal basis for which the fees were granted.  Even if it could be assumed the district court granted fees to Masumoto for defending against Cedillos's Motion to Compel Discovery pursuant to District Court Rule of Civil Procedure 37(a)(4), there is no indication as to what grounds justified the award of fees with respect to defending against Cedillos's other motions.  Notably, the rental agreement did not include an attorney's fee provision, and therefore fees were unavailable under HRS § 521-35 (2006) (permitting rental agreements to include an attorney's fee provision within certain parameters).  Additionally, the record does not reflect that the fees were issued as a sanction against Cedillos, or that the district court found Cedillos's motions to have been frivolous. See, e.g., HRS § 607-14.5 (Supp. 1999).

In the light of the district court's lack of explanation, it appears from the record that the district court granted fees for the pre-trial motions due to Masumoto having "prevailed" on the summary judgment proceeding, as the January 23 Judgment issued after the district court issued the Writ of Possession and Judgment for Possession.  That Masumoto requested

43

attorney's fees (including those already awarded by the January 23, 2013 Judgment) on March 6, 2013 and indicated that it was in-part pursuant to HRS § 607-14 (Supp. 1997),[13] underscores this interpretation.  Under these circumstances, the January 23 Judgment should be vacated as a matter of course when the Writ of Possession and Judgment for Possession are also vacated.

### V.  Conclusion

For the foregoing reasons, the ICA's July 2, 2015 Judgment on Appeal entered pursuant to its May 27, 2015 SDO is vacated.  The district court's "January 17, 2013 Judgment for Possession and Writ of Possession" and Judgment dated January 23, 2013 are vacated.  This matter is remanded to the district court for (1) for a determination of damages under HRS § 521-74(c) (2006),[14] owed to Cedillos on account of his improper removal from the property on January 20, 2013, and (2) a re-

---

[13]     In all the courts, in all actions in the nature of assumpsit . . . there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable . . . provided that this amount shall not exceed twenty-five per cent of the judgment.

HRS § 607-14.

Masumoto also checked the box for "[HRS] § 666-14 (summary possession)" as a basis for attorney's fees.  However, that statute concerns the payment of attorney's fees by a party requesting a stay of the execution of a writ of possession, which was not at issue in March 2013 given that the writ was already executed in January 2013.

[14] "Any tenant from whom possession has been recovered or who has been otherwise involuntarily dispossessed, in violation of this section, is entitled to recover the damages sustained by the tenant and the cost of suit, including reasonable attorney's fees."  HRS § 521-74(c).

44

examination as to whether and why attorney's fees for various pre-trial motions should be awarded to Masumoto, alongside resolution of Cedillos's claims in his case-in-chief.

| | |
|---|---|
| Philip Cedillos,<br>petitioner pro se | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Matson Kelley,<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

