ROBERT PAULLIN AND S & D MANAGEMENT INC., APPELLANTS, *v.* BARBARA SUTTON, RESPONDENT.

No. 16598

September 10, 1986      724 P.2d 749

*J. Bruce Alverson* and *Bryce A. Dixon,* Las Vegas; *Hyman, Gurwin, Nachman, Friedman & Winkelman* and *Richard D. Bisio,* Southfield, Michigan, for Appellants.

*Vannah, Roark & Madson,* Las Vegas, for Respondent.

*Robert E. Gaston,* Las Vegas, for Amicus Curiae.

## OPINION

*Per Curiam:*

This action involves allegations of retaliatory eviction by a residential landlord, in violation of NRS 118A.510. The tenant, Barbara Sutton, contended that her eviction from her apartment home of nineteen years was motivated by her complaints concerning persistent plumbing problems and the filthy condition of the common areas.

The eviction apparently resulted from a series of disputes between Sutton and the manager of the Las Vegas Manor Apartments, Robert Paullin. In March of 1983, Paullin received a memo from his supervisor directing him to inspect all storage areas and make sure they were cleaned out. Paullin testified that he went to the storage shed near Sutton's apartment, discovered that none of his keys fit the lock, and instructed a handyman to break the lock. At that time, Sutton came out and informed Paullin that the items in the storage shed belonged to her. Sutton claimed that use of the shed had been part of her lease when she first moved into the building in 1964. Paullin had a new lock put on the shed and gave a key to Sutton pending resolution of the question of Sutton's use of the shed. On April 22, 1983, Paullin delivered a letter to Sutton instructing her to (1) bring her apartment into a clean and sanitary condition within ten days[1]; (2) vacate and clean the storage unit within thirty days; (3) immediately remove from her window a sign which read, "Please inquire at the office about names and addresses. Thank you."[2];

---

[1]According to Paullin, a plumber had reported the unclean condition of Sutton's apartment.

[2]Paullin testified that the sign, which had been in Sutton's window for over seven years, was a dirty eyesore. Paullin had ordered a large sign directing visitors to the manager's office, which was to be placed in the grass near the front of Sutton's apartment. The evidence is conflicting as to whether the new sign had been erected at this time, and as to whether Paullin had informed Sutton that a new sign was being provided by the apartment owners.

and (4) put current license plates on her car, inflate the tires, and bring it into operable condition within ten days, or it would be towed away at her expense.[3] Paullin testified that, upon receiving this letter, Sutton stated that she was "not going to do a damn thing." Paullin spoke to his supervisor later that day concerning the problems with Mrs. Sutton, following up the call with a letter detailing the problems he was having with her. His supervisor instructed Paullin to serve a notice to quit upon Sutton. This decision was made within four days of the April 22 demand served upon Sutton. The notice was served May 2. At that time, Sutton had not removed the sign or the items in the storage shed, and had not repaired or removed the automobile. She vacated the premises on June 2, 1983, and brought this action against S & D Management, Inc. (S & D), the owners of the apartments, and against Robert Paullin. S & D appeals from a jury verdict awarding Sutton $12,000 in compensatory and $88,000 in punitive damages.[4]

S & D first contends that the evidence does not support a finding of retaliatory eviction. In considering such a claim, this court must assume that the jury believed all the evidence favorable to the prevailing party and drew all reasonable inferences in her favor. The verdict of the jury will be overturned only if there is no substantial evidence to support it. *E.g.*, General Motors v. Reagle, 102 Nev. 8, 714 P.2d 176 (1986). We find that sufficient evidence was presented to support the jury's finding that the eviction was retaliatory. While there was also evidence that the eviction was motivated by the tenant's failure to comply with the obligations of her lease, rather than for any retaliatory purpose, it was for the trier of fact to determine the credibility of the testimony presented. *See, e.g.*, Jacobson v. Best Brands, Inc., 97 Nev. 390, 632 P.2d 1150 (1981). However, for the reasons stated below, we are unable to sustain the award of $12,000 in compensatory and $88,000 in punitive damages.

It is the burden of the plaintiff to prove damages. *E.g.*, Kelly Broadcasting Co. v. Sovereign Broadcast, 96 Nev. 188, 606 P.2d 1089 (1980). In this case, the only evidence of Sutton's damages was her testimony that, following her eviction, she purchased a condominium for $25,000 down and $1,552 mortgage payment (plus $135 association fee) per month. We hold as a matter of law

---

[3]Mrs. Sutton had not driven the car since her husband's death in July of 1975. The car had been operated only once since that time, when Sutton allowed a workman to move it in order to repave the parking lot.

[4]The jury also entered a verdict against Paullin, awarding only punitive damages in the amount of $300. Sutton did not attempt to enter judgment against Paullin.

that damages for retaliatory eviction do not include all or part of the purchase price of a new home by the former tenant. Although Sutton's answers to interrogatories indicated that she did incur expenses in moving, she did not introduce one scintilla of evidence at trial concerning the amount of these expenses. Because Sutton has failed to carry the burden of proving her damages, we must vacate the compensatory damage award of $12,000. Further, she is not entitled to a new trial to introduce evidence which she failed to present at the first trial. Bradley v. Romeo, 102 Nev. 103, 716 P.2d 227 (1986).

This court has previously held that an award of punitive damages cannot stand in the absence of a valid award of compensatory damages. *See, e.g.,* Novack v. Hoppin, 77 Nev. 33, 43-44, 359 P.2d 390, 395 (1961). Further, we hold that punitive damages were not properly recoverable in this case. While NRS 118A.510 clearly prohibits the non-renewal of a month-to-month tenancy for a retaliatory purpose, that statute, as it existed in 1983, was silent as to the issue of whether punitive damages were recoverable for a "retaliatory eviction."[5] It is notable, however, that an amendment to the bill creating NRS 118A.510 altered the language providing for recovery of "damages" to allow the recovery of only "actual damages." Considering all these factors, we are unable to say that Nevada landlords had notice that such conduct would subject them to liability for punitive damages. Under these circumstances, we believe it would be unfair to subject the landlord to limitless liability for punitive damages for such conduct. *Cf.* Hansen v. Harrah's, 100 Nev. 60, 65, 675 P.2d 394, 397 (1984) (unfairness of imposing liability for punitive damages where conduct had not previously been declared actionable). The award of $88,000 in punitive damages must therefore be vacated.[6]

For the reasons stated above, the judgment of the district court must be reversed.

Mowbray, C. J., and Springer, Gunderson, and Young, JJ., and Zenoff, Sr. J.,[7] concur.

---

[5]In 1985 the statute was amended to provide that a tenant demonstrating retaliatory eviction may recover actual damages, $1,000, or both.

[6]In addition, it is difficult to see how, on the record presented, the district court determined that there was sufficient evidence of malice in fact to allow the jury to consider the issue of punitive damages. *See, e.g.,* Warmbrodt v. Blanchard, 100 Nev. 703, 692 P.2d 1282 (1984); Bader v. Cerri, 96 Nev. 352, 609 P.2d 314 (1980).

[7]The Honorable David Zenoff, Senior Justice, was designated by the Governor to sit in place of Justice Thomas L. Steffen, who voluntarily disqualified himself. Nev. Const., art. 6, § 4.