133 Nev., Advance Opinion 79

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| CLARK COUNTY SCHOOL DISTRICT,<br>Appellant,<br>vs.<br>MAKANI KAI PAYO,<br>Respondent. | No. 68443 |



FILED

OCT 26 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a final judgment in a tort action. Eighth Judicial District Court, Clark County; Valorie J. Vega, Judge; Richard Scotti, Judge; Joseph Hardy, Jr., Judge.

*Reversed.*

Clark County School District, Office of the General Counsel, and Daniel L. O'Brien, Senior Assistant General Counsel, Las Vegas,
for Appellant.

Kurth Law Office and Robert O. Kurth, Jr., Las Vegas,
for Respondent.

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, HARDESTY, J.:

In this appeal, we are asked to reverse a judgment on a jury's negligence verdict, awarding past and future medical damages to a former

---

[1]The Honorable Lidia S. Stiglich, Justice, did not participate in the decision of this matter.



17-36861

middle school student who sustained an eye injury during his physical education class. According to appellant, the negligence claim is barred by two legal doctrines—implied assumption of risk and discretionary-function immunity—and, regardless, it was otherwise unsupported by evidence that would allow recovery. With regard to implied assumption of risk, we conclude that the doctrine does not apply here, as the student's participation in the physical education class was compulsory and thus lacks the required element of voluntariness on which assumption of the risk is based.

With regard to discretionary-function immunity, we conclude that the doctrine applies to the school district's decisions to add floor hockey as a unit of the physical education curriculum and to not provide safety equipment because those decisions meet both elements of the discretionary-function-immunity test in that they are both discretionary and policy-based. Although these decisions are protected under the discretionary-function-immunity doctrine, the school district is not immune from liability for allegedly negligent administration, instruction, and supervision of the floor hockey class as such decisions, while discretionary, are not based on policy and thus fail to meet both elements of the discretionary-function-immunity test.

Finally, upon review of the record, we agree with appellant that as a matter of law, respondent failed to provide sufficient evidence to support the jury's finding of proximate cause, and thus his negligence claim fails. Accordingly, we reverse the judgment.

*FACTS AND PROCEDURAL HISTORY*

In 2004, respondent Makani Kai Payo was an 11-year-old student attending C.W. Woodbury Middle School, a school located within appellant Clark County School District (CCSD). While participating in a

floor hockey game as part of his mandatory physical education class, another student unintentionally struck Payo in the eye with his hockey stick. As a result of the accident, Payo required eye surgery and attended several medical appointments for his eye between 2004 and 2007.

Woodbury implemented floor hockey into its curriculum in 1997 with the approval of school district officials. Although the "Woodbury Hockey Unit" rules indicated that teams were supposed to have 6 players each, each team generally had 8 to 10 players because class sizes were large in 2004. While the unit rules also stated that the game was to be played with a specific type of ball, testimony indicated that a tennis ball may have been used instead. The unit rules did not mandate the use of safety equipment during floor hockey activities.

On September 21, 2012, Payo, then an adult, filed a complaint against CCSD alleging negligence, negligent infliction of emotional distress, negligence per se, and negligent supervision. CCSD moved to dismiss the complaint, arguing among other things that Payo's negligence claims were barred by the implied assumption of risk doctrine, Payo's parents were indispensable parties, Payo was not permitted to collect medical expenses that he did not incur, and the complaint failed to allege any facts to support a negligent supervision claim. The district court granted in part CCSD's motion, dismissing the negligent infliction of emotional distress and negligence per se claims, but the district court denied the motion as to the negligence and negligent supervision claims, finding that CCSD failed to meet its burden to show that there was no set of facts on which Payo could prevail.

CCSD later moved for summary judgment, arguing that it had no duty to provide safety equipment, being struck with a hockey stick is a

 

risk inherent in the sport and CCSD did nothing to increase the risk such that it could be liable for Payo's injury, Payo failed to state any facts or identify admissible evidence to support his remaining claims, and regardless, Payo's damages should be limited to future medical expenses and past and future general damages. The district court denied CCSD's motion and Payo's countermotion for summary judgment, determining that genuine issues of material fact existed as to duty, whether CCSD exercised reasonable care in allowing floor hockey in P.E. class without providing safety equipment, whether the treatment and advice CCSD provided to Payo was reasonable, and whether additional training, supervision, or equipment could have prevented the injury.

Prior to trial, CCSD argued that it was entitled to discretionary-function immunity with regard to the decision to adopt floor hockey as a part of the P.E. curriculum and with regard to the decision to not provide safety equipment, but the district court rejected that argument and allowed Payo to allege negligence on those grounds. During closing arguments, Payo's counsel stated, "We're here because they dispute that they did anything wrong and we say they did do something wrong. They created this activity. Do they have to play floor hockey? . . . [W]hy make these kids play this activity?"[2] Counsel further argued, "they never should have been playing the game in the first place,"

---

[2]Counsel also suggested the choice to play floor hockey was negligent because there are many other sports to choose from: "there's plenty of other activities and—and sports and other events that they could do in physical education class, they didn't have to do this." Counsel later inquired, "Do they have to play floor hockey? Could they have played basketball?"

and "[t]he school district has a general duty to exercise reasonable care. They increase the risk of harm by putting them into this activity, by agreeing to have the activity . . . ." Payo's counsel also argued, "Makani was damaged and injured because of the negligence on the part of the school district by not providing simple safety equipment by playing this game. Why play the game if you don't have the equipment?"

During trial, Payo argued that CCSD was negligent for violating the school's rules regarding team size, for using a tennis ball rather than a rubber ball as prescribed by the school's rules, for failing to provide safety equipment, and for negligently supervising and instructing the students. Todd Peterson, Payo's physical education teacher at the time of the accident, testified that he supervised the game, and, while the students were not required to wear any protective gear, he did instruct them on the rules of hockey, including the rule prohibiting "high sticking." Although Payo did not recall Mr. Peterson giving such instructions, Payo did recall someone mentioning no "high sticking," meaning no swinging the stick above the shoulder. Payo could not remember exactly where Mr. Peterson was during the game, but he testified that he did not believe that Mr. Peterson left the area. Payo further testified that Mr. Peterson could not have done anything to prevent the accident once it started because it occurred so quickly. When asked what wrongdoing caused his injury, Payo stated, "Maybe safety equipment could have been provided where I had head protection, maybe safety goggles or something."

The jury found in favor of Payo and awarded him $48,288.06 for past medical expenses, $10,000 for future medical expenses, $2,000 for past pain and suffering, and $0 for future pain and suffering. The district court entered a post-verdict order allowing Payo to recover past medical

expenses and reducing Payo's damages to the then-applicable statutory cap of $50,000, pursuant to NRS 41.035.[3] The district court then entered a judgment in favor of Payo. CCSD appeals.

## DISCUSSION

On appeal, CCSD argues that the judgment should be reversed because (1) the implied assumption of risk doctrine bars Payo's claims; (2) Payo's claims should have been dismissed under the discretionary-function-immunity doctrine; and (3) regardless, the evidence did not support a finding of proximate cause.

### Implied assumption of risk doctrine

CCSD argues that Payo is precluded from recovery under the implied assumption of risk doctrine. We review an order regarding summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is proper if the evidence and pleadings show that no genuine issue of material fact exists "and that the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation marks omitted). When deciding a summary judgment motion, all evidence "must be viewed in a light most favorable to the nonmoving party." *Id.*

Implied assumption of risk requires "(1) voluntary exposure to danger, and (2) actual knowledge of the risk assumed." *Sierra Pac. Power*

---

[3]Prior to trial, CCSD moved to strike Payo's damages calculation, arguing that Payo did not have any evidence to support his assertion that he incurred special damages and that Payo could not recover for medical expenses paid by his parents when he was a minor. The district court denied the motion.

 

*Co. v. Anderson*, 77 Nev. 68, 71, 358 P.2d 892, 894 (1961) (internal quotation marks omitted); *see also Papagni v. Purdue*, 74 Nev. 32, 35, 321 P.2d 252, 253 (1958) ("[A]ssumption of risk is founded on the theory of consent . . . .").

Physical education is mandated by the Legislature. *See* NRS 389.018(3)(d). Because Payo was required to participate in a physical education class, we cannot conclude that Payo "voluntar[ily] expos[ed]" himself to the dangers of physical education pursuant to the first requirement of the implied assumption of risk doctrine. *Sierra Pac. Power*, 77 Nev. at 71, 358 P.2d at 894. Accordingly, because the first requirement is not satisfied, we conclude that the implied assumption of risk doctrine does not apply to preclude a plaintiff from alleging negligence and seeking to recover damages for injuries sustained in compulsory physical education classes.

This conclusion is consistent with other jurisdictions that have rejected implied assumption of risk as a bar to negligence causes of action based on injuries that occurred in compulsory P.E. classes. *See, e.g., Benitez v. N.Y.C. Bd. of Educ.*, 541 N.E.2d 29, 33 (N.Y. 1989) (declining to apply implied assumption of risk while explaining that there is "a distinction between the circumstances of a physical education course, where participation is compulsory, and purely voluntary activity in interscholastic sports"); *Hemady v. Long Beach Unified Sch. Dist.*, 49 Cal. Rptr. 3d 464, 476 (Ct. App. 2006) (rejecting application of primary assumption of risk while noting, "seventh grade students are required to take physical education," and "[p]roviding students with some choice in the matter as to what activities to take does not negate the fact that physical education and attending grade school are mandatory and

SUPREME COURT
OF
NEVADA

(O) 1947A

compulsory"); *Stoughtenger v. Hannibal Cent. Sch. Dist.*, 935 N.Y.S.2d 430, 432 (App. Div. 2011) (concluding primary assumption of risk was an inapplicable defense and stating, "there are important distinctions between voluntary participation in interscholastic sports and recreation activities and compulsory participation in physical education class"); *see also* Frederic R. Pamp, *Cause of Action to Recover for Injury to or Death of Student Participating in Physical Education Class or School Athletic Activity*, 14 *Causes of Action* 505 § 12 (1987 & Supp. 2017) (explaining that "it may be possible to show the student's voluntary assumption of the risk of injury" in a mandatory physical education class if "the student was injured while voluntarily participating in a phase of the class or activity that was not required of all students").

Because Payo's injury occurred while he was participating in a required activity during his physical education class, the implied assumption of risk doctrine does not apply to bar Payo's negligence action. Therefore, we conclude that the district court properly denied CCSD's motion for summary judgment with regard to the implied assumption of risk doctrine.

*Discretionary-function-immunity doctrine*

In its answer to Payo's complaint, CCSD alleged that Payo's claims were barred by the doctrine of discretionary-function immunity. CCSD raised its discretionary-function-immunity argument in its motion for summary judgment and again in a pretrial brief before the district court. CCSD argued that the discretionary-function-immunity doctrine precluded Payo's recovery on his theories that CCSD was negligent in its implementation and administration of the floor hockey unit, which included a failure to provide for safety equipment. The district court

rejected CCSD's argument and allowed Payo to argue that CCSD was negligent in implementing and administering floor hockey as part of the curriculum.

Questions of law are reviewed de novo. *Argentena Consol. Mining Co. v. Jolley Urga Wirth Woodbury & Standish*, 125 Nev. 527, 531, 216 P.3d 779, 782 (2009). Nevada jurisprudence provides a two-part test for determining whether discretionary-function immunity under NRS 41.032[4] applies to shield a defendant from liability. *Martinez v. Maruszczak*, 123 Nev. 433, 445-47, 168 P.3d 720, 728-29 (2007); *Butler v. Bayer*, 123 Nev. 450, 465-66, 168 P.3d 1055, 1066 (2007). Under the two-part test, a government defendant is not liable for an allegedly negligent decision if the decision (1) involves an "element of individual judgment or choice," and (2) is "based on considerations of social, economic, or political policy." *Martinez*, 123 Nev. at 446-47, 168 P.3d 729.

In *Martinez*, the plaintiff sued a physician employed by the state university medical school for medical malpractice, and the physician sought a declaration that he was entitled to judgment in his favor on sovereign immunity grounds. The district court determined that the physician was not entitled to sovereign immunity. On appeal, this court adopted the federal two-part test for determining when discretionary-function immunity applies and concluded that the physician's diagnostic

---

[4]NRS 41.032(2) is an exception to the state's waiver of sovereign immunity, under which no civil action may be brought against the state or its political subdivisions "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused."

and treatment decisions, while discretionary in that they involved judgment or choice, failed to meet the second part of the test because those decisions were not based on policy considerations. *Id.* at 447, 168 P.3d at 729. In so doing, this court explained that determining whether discretionary-function immunity applies involves (1) an assessment of the facts; (2) recognizing that Nevada's waiver of sovereign immunity applies broadly and exceptions to it are strictly construed; and (3) consideration of the exception's purpose, which is to "'prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic and political policy.'" *Id.* at 446, 168 P.3d 729 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)); *see Butler*, 123 Nev. 450, 465-66, 168 P.3d 1055, 1066 (recognizing that the purpose of the waiver of sovereign immunity is "'to compensate victims of government negligence in circumstances like those in which victims of private negligence would be compensated'" and rejecting defendants' discretionary-function-immunity defense because the decision to leave a disabled paroled prisoner in a precarious situation, while discretionary, was not policy-based and thus not entitled to discretionary-function immunity (quoting *Harrigan v. City of Reno*, 86 Nev. 678, 680, 475 P.2d 94, 95 (1970))).

Although this court has not addressed whether discretionary-function immunity applies in the context of an injured student's allegations of negligent supervision or instruction in a P.E. class, other courts have addressed the issue with mixed outcomes. Some courts have concluded that teachers are immune from liability for claims of negligent supervision of a P.E. class. *See Mosely v. Dayton City Sch. Dist.*, No. 11336, 1989 WL 73988, at *3 (Ohio Ct. App. July 6, 1989) (finding that the manners in which the physical education teacher conducted and

Supreme Court
OF
Nevada

(O) 1947A

instructed his class in the absence of wanton or reckless conduct were decisions protected by discretionary immunity). Other courts, with whom we agree, have determined that discretionary-function immunity does not apply in cases alleging inadequate supervision or instruction because the decisions related to supervising and instruction, while discretionary, are not policy-based, as required by the second part of the discretionary-function-immunity test.

For example, a New Jersey appellate court considered whether a physical education teacher and township board of education were immune from liability where a middle school student was injured during floor hockey when the hockey puck struck his eye. *Sutphen v Benthian*, 397 A.2d 709 (N.J. Super. Ct. App. Div. 1979). The student alleged that the teacher and school board were negligent because although school authorities knew that his eye sight was deficient in one eye, they required "him to participate in the hockey game, with an excess number of players on each team, in a playing area that was too small for the purpose and without providing him with, and requiring him to use, proper protective equipment during the contest." *Id.* at 710. The court determined that the teacher and the board of education could be liable for the alleged negligence because the decisions the plaintiff complained of were not high-level policy decisions entitled to discretionary immunity. *Id.* at 711.

A trial court in Connecticut analyzed the claim of a college student who was injured in a cheerleading stunt that she performed as a member of a self-governing, but officially school-recognized, cheerleading club to determine whether the defendants (the New Hampshire University System, the director of the student center, the club's advisor, and the club's coach) were entitled to summary judgment on sovereign immunity

 


grounds.[5] *Gonzalez v. Univ. Sys. of New Hampshire*, No. 451217, 2005 WL 530806, at *17 (Conn. Super. Ct. Jan. 28, 2005). The court denied summary judgment on the defendants' discretionary-function-immunity defense, noting that such immunity applies to "conduct involving an executive or planning function characterized by the exercise of a high degree of official judgment or discretion." *Id.* at *16. The trial court pointed to the New Hampshire Supreme Court's statement that "it would be possible for workers to implement a faulty design or plan, for which no tort liability should result, but that if, on the other hand, workers negligently follow or fail to follow an established plan or standards, and injuries result, then a *government entity* could be subject to tort liability." *Id.* at *17 (quoting *Mahan v. N.H. Dep't of Admin. Servs.*, 693 A.2d 79, 82 (N.H. 1997) (emphasis added)). Applying the New Hampshire Supreme Court's reasoning, the trial court concluded that the "state is not entitled to sovereign immunity for the acts or omissions of [the student center director, club advisor, or coach]," as "[n]one had an executive or planning function 'characterized by the exercise of a high degree of official judgment or discretion.'" *Id.* (quoting *Mahan*, 693 A.2d at 82).

In reaching that conclusion, the court recognized that the coach had broad discretion in implementing coaching methods and the advisor had broad discretion in how often she met with the club, but that those coaching and advising decisions were not entitled to discretionary immunity unless they entailed "governmental planning or policy

_____

[5]Defendants in that case also sought summary judgment based on the assumption of risk doctrine.

SUPREME COURT
OF
NEVADA

(O) 1947A

12

formulation, involving the evaluation of economic, social, and political considerations." *Id.* The trial court concluded that there was no evidence that the decisions by the coach, advisor, or director "entailed such considerations," and thus, "the defendants [we]re not entitled to summary judgment on the ground of sovereign immunity." *Id.*

The reasoning in *Gonzalez* and *Sutphen* is consistent with the way this court has resolved cases involving the application of discretionary-function immunity as that reasoning recognizes that for immunity to apply, the decision in question must be both discretionary and policy-based. *Martinez*, 123 Nev. at 445-47, 168 P.3d at 728-29; *Butler*, 123 Nev. at 466-67, 168 P.3d at 1066 (concluding that the Nevada Department of Corrections, the State of Nevada, and two correctional officers were not entitled to discretionary-function immunity for their actions in leaving a paroled prisoner, who suffered from brain damage and quadriplegia, at his girlfriend's residence despite evidence that neither the girlfriend nor her residence were equipped to handle the prisoner's special needs because those "actions were not based on the consideration of any social, economic, or political policy").

Applying the same reasoning to the present case, the supervision of the floor hockey unit and decisions to (1) allow more players on the floor than indicated in the rules; (2) play with a different type of ball than set forth in the rules; and (3) supervise the class in the manner Mr. Peterson did, although discretionary, were not based on policy considerations to which immunity would typically apply. *Martinez*, 123 Nev. at 445-47, 168 P.3d at 728-29; *Butler*, 123 Nev. at 466-67, 168 P.3d at 1066; *Sutphen*, 397 A.2d at 709; *Gonzalez*, 2005 WL 530806, at \*17. Thus, to the extent that Payo argued that CCSD was liable for the coach's

SUPREME COURT
OF
NEVAOA

(O) 1947A

negligent supervision or instruction during the floor hockey class, the district court properly determined that discretionary-function immunity did not apply to preclude Payo from moving forward on his claims.

On the other hand, CCSD's decisions to add the floor hockey class to the curriculum and to not provide safety equipment were policy-based and discretionary, and thus meet both parts of the discretionary-function test. The physician in *Martinez* is analogous to Mr. Peterson in this case because in both the hospital and the school district settings, discretionary policy decisions are made at a broad level that impact how the physician and Mr. Peterson can do their jobs as state employees, such as the choice to open a public hospital in *Martinez* and the choice to add floor hockey to the P.E. curriculum and to not provide safety equipment because of budgetary concerns in this case. However, the discretionary decisions based on each employee's choice and judgment that the *Martinez* physician made in providing medical treatment to individual patients and that Mr. Peterson made in supervising his P.E. class, such as the choices regarding team size and game instruction, are not policy-based decisions that are entitled to discretionary immunity. *Martinez*, 123 Nev. at 447, 168 P.3d at 729 (noting that "the decision to create and operate a public hospital and the college of medicine are the type of decisions entitled to discretionary-function immunity, because those decisions satisfy both prongs of the *Berkovitz-Gaubert* test; namely, they involve elements of judgment and choice, and they relate to social and economic policy"); *Butler*, 123 Nev. at 467, 168 P.3d at 1066 (concluding that while respondents were not entitled to discretionary-function immunity for their actions of leaving Butler at his girlfriend's house, "several decisions, including the decision to parole Butler and the formulation of any

 

overarching prison policies for inmate release are policy decisions that require analysis of multiple social, economic, efficiency, and planning concerns," and thus would have been entitled to immunity); *Hacking v. Town of Belmont*, 736 A.2d 1229 (N.H. 1999) (concluding that the defendant school district and town (1) were entitled to discretionary-function immunity to the extent that plaintiff, who was injured in a school basketball game, was alleging that defendants were liable for negligently training and supervising coaches and referees because those decisions involved policy and planning choices, but (2) were not entitled to discretionary-function immunity to the extent that plaintiff alleged liability based on the in-game decisions of the coaches and referees, including decisions on whether to substitute a player and call a foul, because those decisions were not policy-based).

Accordingly, discretionary-function immunity bars Payo's arguments that CCSD was negligent in deciding to add a floor hockey unit to the P.E. curriculum and adopt rules that excluded safety equipment. These decisions were policy-based and discretionary, and thus entitled to discretionary-function immunity. On the other hand, discretionary-function immunity does not apply to nonpolicy based decisions to allow (a) a nonregulation ball to be used, and (b) permit more students on the floor than indicated in the rules.

The jury did not use special verdict forms; therefore, it is unclear how the jury assessed CCSD's negligence. Because we conclude that discretionary-function immunity bars only some of Payo's allegations, it is necessary to discuss the sufficiency of evidence for proximate cause for Payo's remaining negligence claims.

 

*Proximate cause*

Although we determine that Payo's claim for negligent administration of the floor hockey class is not barred under the assumption of risk or discretionary-function-immunity doctrines, CCSD argues that Payo failed to produce substantial evidence that any conduct on behalf of CCSD was the proximate cause of Payo's injuries. The jury found CCSD negligent and, therefore, found that CCSD breached a duty to Payo and that the breach was the proximate cause of Payo's injury, which resulted in Payo's damages. In considering CCSD's argument that the verdict is not supported by substantial evidence, we must assume that the jury believed all the evidence favorable to Payo and drew all reasonable inferences in his favor. *Paullin v. Sutton*, 102 Nev. 421, 423, 724 P.2d 749, 750 (1986). Further, this court will overturn the jury's verdict only if there is no substantial evidence to support it. *Id.* "Substantial evidence has been defined as that which a reasonable mind might accept as adequate to support a conclusion." *Finkel v. Cashman Prof'l, Inc.*, 128 Nev. 68, 73, 270 P.3d 1259, 1262 (2012) (quoting *McClanahan v. Raley's, Inc.*, 117 Nev. 921, 924, 34 P.3d 573, 576 (2001) (internal quotation marks omitted)). Although proximate cause is generally a question of fact for the jury, this court will not uphold a verdict where the plaintiff as a matter of law cannot recover. *See Lee v. GNLV Corp.*, 117 Nev. 291, 296, 22 P.3d 209, 212 (2001).

"It is well established that to prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." *Sanchez v. Wal-Mart Stores*, Inc., 125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009). Causation has two components: actual cause and proximate cause. *Dow*

 

*Chem. Co. v. Mahlum*, 114 Nev. 1468, 1481, 970 P.2d 98, 107 (1998), *disfavored on other grounds by GES, Inc. v. Corbitt*, 117 Nev. 265, 270-271, 21 P.3d 11, 14-15 (2001). Proximate cause is defined as "any cause which in natural [foreseeable] and continuous sequence unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have occurred." *Goodrich & Pennington Mortg. Fund, Inc. v. J.R. Woolard, Inc.*, 120 Nev. 777, 784, 101 P.3d 792, 797 (2004) (quoting *Taylor v. Silva*, 96 Nev. 738, 741, 615 P.2d 970, 971 (1980) (internal quotation marks omitted)).

Payo's negligence claim was based on the type of ball used, the large team sizes, and the alleged lack of instruction provided by Mr. Peterson.[6] However, no evidence in the record supports a finding that any of these three assertions was the proximate cause of Payo's injury. *See Odekirk v. Bellmore-Merrick Cent. Sch. Dist.*, 895 N.Y.S.2d 184, 186 (App. Div. 2010) (affirming summary judgment in favor of school district, concluding that plaintiff failed to demonstrate proximate cause because plaintiff's injuries "could not have been prevented by the most intense supervision" (quoting *Scarito v. St. Joseph Hill Acad.*, 878 N.Y.S.2d 460, 462 (App. Div. 2009))).

---

[6]Although Payo also asserted a claim for negligent supervision, and in closing arguments his counsel argued that CCSD negligently supervised the first aid safety assistant, Payo offered no testimony, expert or otherwise, to show how CCSD negligently supervised the first aid safety assistant or Mr. Peterson. *See Hall v. SSF, Inc.*, 112 Nev. 1384, 1393, 930 P.2d 94, 99 (1996) (describing a claim for negligent supervision as an employer having a "duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions").

SUPREME COURT
OF
NEVADA

(O) 1947A

Payo testified that a tennis ball was used during the game rather than a specific type of rubber ball prescribed by the rules. However, Payo failed to offer any testimony or evidence that would demonstrate how using the tennis ball caused the injury to his eye. Similarly, Mr. Peterson testified that each team generally had 8-10 players, which demonstrated that the teams were larger than the school rules indicated, but Payo failed to offer any testimony or evidence to show that the larger team sizes contributed to his injury. When asked what conduct caused his injuries, Payo suggested that the school could have provided safety equipment; however, as discussed above, CCSD's decision to exclude safety equipment from the floor hockey rules was entitled to discretionary-function immunity. And the rules did not require safety equipment. Further, Payo produced no evidence or expert testimony to show how the lack of safety equipment caused his injury. *See Walker v. Commack Sch. Dist.*, 820 N.Y.S.2d 287, 288 (App. Div. 2006) (finding summary judgment warranted for the school district when a student alleged negligence for failing to provide mouth protectors during floor hockey when she was struck in the mouth by another student's hockey stick because there were no standards requiring mouth protectors and because no amount of supervision could have prevented the accident).

Finally, Payo testified that while he could not remember Mr. Peterson *giving* instructions prior to playing floor hockey, he did remember someone mentioning no "high-sticking," and Mr. Peterson testified that he gave such an instruction. Payo could not say whether additional or different measures could have prevented his injury. Payo further acknowledged that his teacher did not do anything to cause his injury and he knew of nothing the teacher did wrong. In fact, Payo

 

testified that the incident happened so quickly that there was no way to prevent his injury. *See Bramswig v. Pleasantville Middle Sch.*, 891 N.Y.S.2d 160, 162 (App. Div. 2009) (concluding that the proximate cause of alleged injuries sustained by student, who was struck by teammate's hockey stick, was not school's alleged failure to issue proper instruction regarding "highsticking," and thus school could not be held liable for student's injuries based on negligent instruction theory); *Mayer v. Mahopac Cent. Sch. Dist.*, 815 N.Y.S.2d 189, 191 (App. Div. 2006) (determining that inadequate supervision was not the proximate cause of student's injuries where school district did not have any prior notice of any similar conduct to suggest that the accident was foreseeable); *Spaulding v. Chenango Valley Cent. Sch. Dist.*, 890 N.Y.S.2d 162, 164 (App. Div. 2009) (concluding that the school's alleged lack of supervision was not the proximate cause of student's injury resulting from being struck by ball when another student was aiming for the goal because it was a spontaneous and unintentional accident that no amount of supervision could have prevented); *see also Scarito*, 878 N.Y.S.2d at 462 (finding that the school was entitled to judgment as a matter of law because the student's injuries were caused by another student's accidental conduct in a soccer game in "such a short span of time that it could not have been prevented by the most intense supervision," and the failure to provide shin guards was insufficient to create liability).

We conclude that the jury could not have found CCSD's conduct was the proximate cause of Payo's injury or reached its negligence

verdict on any fair interpretation of the evidence, and thus, the verdict must be overturned.[7]

Accordingly, for the reasons set forth above, the judgment against CCSD is reversed.

_____, J.
Hardesty

We concur:

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Pickering

_____, J.
Parraguirre

---

[7]CCSD argues reversal is also warranted because Payo is unable to recover past medical expenses incurred by his parents while he was a minor and because Payo's future medical expenses were unsubstantiated. Based on our disposition, we decline to reach those issues.

GIBBONS, J., concurring in part and dissenting in part:

I concur with the majority as to all the issues except the negligence claim. I would affirm the judgment of liability and for pain and suffering damages since substantial evidence supports the jury's verdict.

_____, J.
Gibbons

SUPREME COURT
OF
NEVADA

(O) 1947A