Electronically Filed
Supreme Court
SCWC-13-0000595
09-MAY-2018
08:13 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

RUTH RYAN,
Respondent/Plaintiff/Counterclaim Defendant/Appellee,

vs.

JOHN HERZOG,
Petitioner/Defendant/Counter-Claimant/Appellant.

_____

SCWC-13-0000595

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0000595; DC-CIVIL NO. 08-1-0948)

MAY 9, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY WILSON, J.

This case concerns a long-running landlord-tenant dispute involving the eviction of a tenant from a landlord's condominium. The district court issued a writ of possession to the landlord in 2008, which was then executed against the tenant. Having been evicted, the tenant appealed to the Intermediate Court of Appeals (ICA) on various grounds. In an unpublished decision, the ICA vacated the district court's ruling in part and remanded. Ryan v. Herzog, 126 Hawai'i 25, 265

P.3d 494 (2011). The district court's decision on remand, in turn, was appealed by the tenant to the ICA, which affirmed the district court except as to an award of attorney fees to the landlord, which the ICA reversed. Ryan v. Herzog, 136 Hawai'i 374, 362 P.3d 807 (2015). We accepted the tenant's application for a writ of certiorari.

On certiorari John Herzog, the tenant, pro se, raises essentially one issue. He contends that in the second appeal the ICA failed to adequately address the district court's denial of what Herzog calls his "implicit counterclaim" for retaliatory eviction. We agree.

Although it addressed other issues raised by the parties, the ICA on the second appeal did not determine whether Herzog properly raised a counterclaim of retaliatory eviction in his original answer. We hold that Herzog did properly raise such a counterclaim in his answer, even though it was not denominated as such. Accordingly, we vacate the judgment of the ICA and the district court, and remand to the district court with instructions to allow Herzog to proceed on the counterclaim in his original answer and to allow the landlord to assert any relevant defenses.

## I. Background

This appeal stems from a landlord-tenant dispute arising in February 2008 between John Herzog (Herzog, or the

Tenant) and Ruth Ryan (Ryan, or the Landlord). Herzog had been a month-to-month tenant residing under an oral agreement at Ryan's condominium on Maui from June 2007 through the beginning of May 2008. In early 2008, Ryan and Herzog apparently began to have disagreements regarding cleaning and upkeep of the condominium. In February 2008, Herzog emailed Ryan alleging that she had engaged in violations of the Residential Landlord-Tenant Code, Hawai'i Revised Statutes (HRS) chapter 521 (2006). Specifically, he alleged that she had abused her right as Landlord to access the apartment in order to harass him,[1] failed to provide two days' notice of her intent to enter the apartment,[2] and obligated him to comply with substantial modifications to the rental agreement without his written consent.[3] Ryan subsequently served on Herzog a 45-day notice to

---

[1] Abuse of access is prohibited by HRS § 521-53(b)(2006), which provides that "[t]he landlord shall not abuse this right of access nor use it to harass the tenant."

[2] Failure to provide notice of intent to enter an apartment violates HRS § 521-53(b), which provides that "[e]xcept in case of emergency or where impracticable to do so, the landlord shall give the tenant at least two days notice of the landlord's intent to enter and shall enter only during reasonable hours."

[3] Requiring a tenant to comply with substantial modifications to the rental agreement without written consent is prohibited by HRS § 521-52 (2006). HRS § 521-52 provides in relevant part:

> (a) The tenant shall comply with all obligations or restrictions, whether denominated by the landlord as rules, or otherwise, concerning the tenant's use, occupancy, and maintenance of the tenant's dwelling unit, appurtenances thereto, and the premises of which the dwelling unit is a part, if: . . . (2) Such obligations or restrictions, if not so known by the tenant at the time of the tenant's

vacate on March 4, 2008. See HRS § 521-71(a)("When the tenancy is month-to-month, the landlord may terminate the rental agreement by notifying the tenant, in writing, at least forty-five days in advance of the anticipated termination."). Herzog continued to tender the usual rent to Ryan through April. See HRS § 521-74(a).

## A. District Court Proceedings

The Landlord filed a complaint for summary possession against the Tenant on April 21, 2008.[4] Acting pro se, the Tenant filed his answer, which was part of the same document as his motion to dismiss,[5] on April 30, 2008, alleging that the Landlord's notice to vacate and complaint for summary possession were retaliatory and thus barred under HRS § 521-74(a).[6] In his

---

entry into the rental agreement, are brought to the attention of the tenant and, if they work a substantial modification of the tenant's bargain under the rental agreement, are consented to in writing by the tenant.

[4]    Because legal rights and duties in landlord-tenant law are role-based, it will be convenient to refer to the parties from now on mainly by reference to their legal roles rather than their surnames.

[5]    The Tenant filed a document titled "Answer to Complaint & Motion to Dismiss."

[6]    HRS § 521-74 provides in relevant part:

(a) Notwithstanding that the tenant has no written rental agreement or that it has expired, so long as the tenant continues to tender the usual rent to the landlord or proceeds to tender receipts for rent lawfully withheld, no action or proceeding to recover possession of the dwelling unit may be maintained against the tenant, nor shall the landlord otherwise cause the tenant to quit the dwelling unit involuntarily, nor demand an increase in rent from the tenant; nor decrease the services to which the tenant has

answer, the Tenant requested that the Landlord's complaint be dismissed based on the Landlord's acts of retaliatory eviction:

> 24. Defendant has been subjected to multiple instances that constitute violations of the Landlord Tenant Act [sic] and therefore the Complaint attempts to evict Defendant in violation of HRS 521-74 Retaliatory Eviction for complaining regarding his rights under HRS 521 et. seq., harassment by Landlord, and Landlord's repeated demand that Defendant spend additional monies over and above the monthly rental rate, an actual rent increase without proper notification.

> 25. If the Court does not uphold Defendant's request for dismissal for failure to notify, Defendant requests that the Court rule that the current actions of providing notice to vacate and all future actions within a reasonable period of time represents [sic] a retaliatory eviction and is contrary to HRS 521-74 and the Complaint should be dismissed with Prejudice.

The district court struck the Tenant's answer on May 2, 2008 for failure to timely serve the Landlord's counsel with a copy of his answer.[7] The court ordered judgment of possession and issued a writ of possession on May 6, 2008. The writ of possession was executed against the Tenant the same day, evicting the Tenant from the Landlord's condominium.

The Tenant filed a motion for reconsideration or new trial on May 19, 2008. The district court dismissed the Tenant's motion because the court found that the Tenant

---

been entitled, after: (1) The tenant has complained in good faith to the department of health, landlord, building department, office of consumer protection, or any other governmental agency concerned with landlord-tenant disputes of conditions in or affecting the tenant's dwelling unit which constitutes [sic] a violation of a health law or regulation or of any provision of this chapter[.]

[7] The Honorable Rhonda Loo presided.

demonstrated no basis to reconsider based on District Court Rules of Civil Procedure (DCRCP) Rule 60.[8]  In particular, the court stated that the Tenant did not demonstrate that the judgment of possession and writ of possession should be reconsidered due to "mistake, inadvertence, excusable neglect, newly discovered evidence, [or] fraud."

Following the oral dismissal of the Tenant's motion, but during the same hearing on the motion for reconsideration or new trial, the Tenant raised a new issue: whether his answer contained a cognizable counterclaim.  The Tenant did not properly caption the putative counterclaim as a "counterclaim" in his original April 30, 2008 answer.  Nonetheless, on page two of that answer, the Tenant had explicitly referred to a section "presented below," titled "Retaliatory Eviction," bolded and underscored.  That section was comprised of 26 numbered paragraphs.  In addition, at the hearing on his motion for

---

[8]    DCRCP Rule 60 provides that the court may relieve a party "from a final judgment, order, or proceeding" for:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

DCRCP Rule 60(b)(2006).

reconsideration or new trial, the Tenant asserted that the following statement in his answer constituted a counterclaim: "Defendant requests lost wages for having to address plaintiff's action of retaliatory eviction, the filing of the complaint, the answering of the complaint by filing of this [answer and motion to dismiss] and appearing at [the hearing on Landlord's complaint]." The court explained to the Tenant that a request, such as the one asserted by the Tenant, is not a counterclaim. The court then informed the Tenant, "if you feel that you need to file a counterclaim, you can follow the rules in doing so. All right?" The Tenant, appearing pro se, apparently interpreted the court's words as an oral grant of leave to file a counterclaim, and further relying on the minutes from the motion hearing,[9] proceeded to file a counterclaim on July 22, 2008. The Landlord filed a motion to strike the Tenant's counterclaim on August 6, 2008.

The district court orally dismissed the Tenant's counterclaim on August 22, 2008 for failure to request leave to amend the counterclaim and for failure to request a hearing on the matter. The order granting the Landlord's motion to strike the Tenant's counterclaim was filed on September 4, 2008.

---

[9] The minutes from the hearing state: "DEFENDANT STATES THAT HE HAS FILED A COUNTERCLAIM AFTER REVIEW OF COURT RECORDS CRT [sic] FINDS THAT NO COUNTER CLAIM WAS FILED AND IF DEFT [sic] WANTS TO FILE A COUNTER CLAIM MAY DO SO."

The Tenant subsequently filed a non-hearing motion for leave to amend or in the alternative to file a counterclaim on November 5, 2008.  The district court on November 10, 2008, denied the motion for filing without a hearing and for failure to notify the Landlord.

## B.  First Appeal

On November 14, 2011, the Tenant appealed the district court's summary possession decision in favor of the Landlord to the ICA.  The Tenant argued the district court erred when it struck the Tenant's answer.  The Tenant also argued that his answer contained a request for damages that should be considered a counterclaim.

In the first appeal, the ICA held that the Tenant's answer was properly and timely served on the Landlord's counsel in the district court proceedings and consequently held that the district court's May 2, 2008 oral order to strike the Tenant's answer was error.  The ICA vacated the oral order striking the Tenant's answer and remanded for further proceedings.  Because the Tenant's month-to-month tenancy expired when he involuntarily vacated the apartment, the ICA dismissed as moot any additional challenges to the May 6, 2008 judgment of possession and writ of possession.

**C.  Trial Proceedings on Remand from First Appeal**

On remand, the district court held a hearing and listed the subject of the hearing as "'Defendant's [Tenant's] Motion to Dismiss' and 'Counterclaim.'"[10]  The district court acknowledged that the ICA had vacated the district court's previous order striking the Tenant's answer to the Landlord's complaint as untimely.  Therefore, the district court ruled that the Tenant had properly filed his answer on April 30, 2008.  However, the district court construed the ICA's opinion to state that any challenges to the writ of possession and judgment were moot at this point.  As a consequence, the district court concluded "that aside from the Court's acknowledging that the defendant has filed an answer and properly filed his answer on April 30, 2008, there's no further action that needs to be taken with regard to the answer."  The district court then solicited comments from the Tenant.

The Tenant, appearing pro se, drew the court's attention to the fact that he had filed a motion for leave of court to amend the implicit counterclaim contained in his answer of April 30, 2008 or, in the alternative, to file a counterclaim.  In response, the Landlord's attorney asserted that since the issue of possession is moot, "no further action

_____

[10]    The Honorable Blaine Kobayashi presided.

is required . . . regardless of what affirmative defenses might have been asserted," a position with which the district court agreed. The district court then ruled that the Tenant's answer, which contained a motion to dismiss (and also what the Tenant now describes as an "implicit counterclaim" for retaliatory eviction) "is essentially moot," and the court therefore denied that motion.

The district court then addressed the Tenant's motion for leave of court to amend the counterclaim or in the alternative file a counterclaim. The court denied the Tenant's motion for leave to amend his counterclaim or in the alternative to file a counterclaim. The court concluded that because the Tenant's counterclaim was stricken in the original action, on September 4, 2008, and because the Tenant was denied leave to amend his counterclaim in the original action, on November 10, 2008, "there was no counterclaim." The court then concluded that "no further action" needed to be taken in regard to the answer.

The district court further explained that it was rejecting the Tenant's motion to amend his counterclaim because "the Court doesn't believe there's anything to amend given the Court's prior rulings that were made in this case." The district court apparently believed that the ICA's vacating of the district court's prior ruling did not affect the district

court's analysis on remand, even though the vacated prior ruling was that the Tenant's answer (containing in substance a counterclaim for retaliatory eviction) was untimely. Instead, the district court interpreted the ICA to hold that "there's no further issues with regard" to the case. Concluding that "we're several years removed from a judgment of possession and writ of possession," the district court denied the Tenant's motion for leave of court to amend his counterclaim or, in the alternative, to file a counterclaim. The district court denied the Tenant's motion, issued an order dismissing any and all remaining claims with prejudice, and awarded attorney's fees and costs to the Landlord.

## D. Second Appeal

On the second appeal, the Tenant contended that the district court erred by depriving him of his due process and statutory rights by denying his right to be heard on his retaliatory eviction claim and by denying his motion for leave of court to amend his existing counterclaim or in the alternative to file a counterclaim. As to the Tenant's contention that the district court denied his procedural due process right to have his claims reviewed on the merits, the Landlord raised three points: (1) The Tenant had an opportunity to have his arguments for leave to amend his counterclaim heard on August 2, 2012; (2) in order to allege procedural due

11

process, the Tenant was required to have a property interest in the condominium at the time of his motion for leave to file a counterclaim; and (3) any pending claims pertaining to the issue of possession were rendered moot by the ICA's summary disposition order in the first appeal.

As to whether the district court erred in denying the Tenant's motion for leave of court to amend counterclaim or in the alternative to file a counterclaim, the Landlord countered: (1) the Tenant failed to preserve this issue for appeal, and (2) the Tenant failed to follow the DCRCP rules to amend his counterclaim. In reply, the Tenant reiterated arguments raised in his opening brief. In response to the Landlord's argument that the Tenant failed to preserve the issue as to whether he could amend his counterclaim, the Tenant claimed that he raised objections in his subsequent filings.

In its summary disposition order, the ICA explained that any defenses contained in the Tenant's original answer were moot on remand because all of the Landlord's claims were completely resolved. As to the Tenant's arguments regarding his counterclaim, the ICA considered only the Tenant's July 22, 2008 counterclaim and his November 5, 2008 motion for leave to file a counterclaim in the original action.

However, the ICA failed to address whether the Tenant's April 30, 2008 answer contained a counterclaim.

12

Rather, the ICA reasoned that because the Tenant did not raise any objections to the striking of his July 22, 2008 counterclaim or the district court's denial of his November 5, 2008 motion for leave to file a counterclaim in his first appeal, he waived any claims regarding the July 22, 2008 counterclaim or the November 5, 2008 motion. Finally, the ICA affirmed the remainder of the district court's rulings but reversed the award of attorney's fees to the Landlord.

## II.  Standards of Review

### A.  Motion to Dismiss

A trial court's ruling on a motion to dismiss is reviewed de novo. Wright v. Home Depot U.S.A., Inc., 111 Hawai'i 401, 406-07, 142 P.3d 265, 270-71 (2006); Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 104, 176 P.3d 91, 103 (2008), as corrected (Jan. 25, 2008).

### B.  Statutory Interpretation

"Statutory interpretation is a question of law reviewable de novo." Kaleikini v. Yoshioka, 128 Hawai'i 53, 67, 283 P.3d 60, 74 (2012).

## III.  Discussion

The Tenant's main argument on certiorari centers on his claim that the ICA erred by failing to recognize that his April 30, 2008 answer and motion to dismiss included a cognizable counterclaim for retaliatory eviction against the

Landlord.  Before we address that argument, however, it will be helpful to provide a brief overview of the relevant law.

## A.  Summary Possession Proceedings, Evictions, and Retaliatory Acts by Landlords

Eviction of the Tenant occurred as a result of the summary proceeding initiated by the Landlord for possession of the dwelling unit in district court.  See HRS § 666-1 (1972)(providing for summary possession proceedings); HRS § 521-68 (1984)(providing for summary proceedings for possession in the context of the Residential Landlord-Tenant Code); HRS § 666-6 (1984)(stating that venue for summary possession proceedings is in the district court where the premises are situated).  Such summary proceedings for recovery of possession of leased property exist in every state.  Restatement (Second) of Property, Land. & Ten. § 14.1 (Am. Law Inst. 1977).

Retaliatory evictions, retaliatory rent increases, and retaliatory decreases in services are prohibited by the Residential Landlord-Tenant Code.  HRS § 521-74(a).  These retaliatory actions are prohibited if they occur subsequent to any one of three different statutorily-specified events.  First, retaliatory actions are prohibited if they occur after the tenant complains "in good faith" to the landlord or to a governmental agency specified in the statute regarding "conditions in or affecting the tenant's dwelling unit" which

constitute a violation of a health law or regulation or "any provision" of the Residential Landlord-Tenant Code.  HRS § 521-74(a)(1).  Second, retaliatory actions are prohibited if they occur after the department of health or any other governmental agency "has filed a notice of complaint of a violation of a health law or regulation of any provision" of the Residential Landlord-Tenant Code.  HRS § 521-74(a)(2).  Third, retaliatory actions are prohibited if they occur after a tenant in good faith requests repairs under HRS § 521-63 or HRS § 521-64.  HRS § 521-74(a)(3).

Once one of those three triggering events occurs and the tenant continues to pay rent, the landlord is prohibited from retaliating by evicting the tenant, raising the rent, or decreasing services.  HRS § 521-74(a).  Specifically, once one of the triggering events occurs, "no action or proceeding to recover possession of the dwelling unit may be maintained against the tenant, nor shall the landlord otherwise cause the tenant to quit the dwelling unit involuntarily, nor demand an increase in rent from the tenant; nor decrease the services to which the tenant has been entitled . . ."  HRS § 521-74(a);[11] see

--------

[11]    The statutory provisions protecting tenants from retaliatory actions by the landlord apply "so long as the tenant continues to tender the usual rent to the landlord or proceeds to tender receipts for rent lawfully withheld . . . ."  HRS § 521-74(a).

Cedillos v. Masumoto, 136 Hawai'i 430, 442, 363 P.3d 278, 290 (2015).

For the tenant to be protected from retaliatory actions by the landlord, the tenant's complaint to the landlord (or to a relevant government agency) must be made "in good faith." HRS § 521-74(a)(1); HRS § 521-74(a)(3). See also HRS § 521-10 ("Every duty imposed by this chapter and every act which must be performed as a condition precedent to the exercise of a right or remedy under this chapter imposes an obligation of good faith in its performance or enforcement."); 1978 Haw. Sess. Laws Act 75, § 1 at 98 (stating that under the Residential Landlord-Tenant Code, "One of the most basic duties imposed upon landlords and tenants is that they act in good faith."). One of the factors bearing on whether a tenant made a complaint in good faith is "whether the tenant made reasonable efforts to bring the alleged violations to the landlord's attention[.]" Restatement (Second) of Property, Land. & Ten. § 14.8. A "tenant need not demonstrate actual retaliation." Cedillos, 136 Hawai'i at 442, 363 P.3d at 290. Instead, "absent certain exceptions, so long as the tenant continues to submit rent, once a tenant has 'complained in good faith' to the landlord or a governmental agency, the landlord is expressly prohibited from (1) maintaining an action or proceeding to recover possession of the premises, (2) otherwise causing the tenant to quit

16

involuntarily, (3) raising the tenant's rent, and (4) decreasing the services to which the tenant is entitled."  Id.

Tenants also have various obligations under the Residential Landlord-Tenant Code.  These include complying with applicable building and housing laws affecting health and safety, keeping premises occupied or used by the tenant clean and safe, disposing in a clean and safe manner of the tenant's rubbish, garbage, and organic and flammable waste, and other obligations specified by the Code.  HRS § 521-51(1)-(8)(1989).  Tenants must comply with a landlord's obligations or restrictions relating to the tenant's use, occupancy, and maintenance of the dwelling unit if appropriate notice has been given by the landlord and certain other conditions have all been met.  HRS § 521-52(a)-(d)(2003); HRS § 521-52(b)(1)-(4).

Landlords, in turn, have various remedies for tenants' failure to meet their statutory obligations.  HRS § 521-69(a)-(c)(1984).  Where a tenant makes a prior, good faith complaint to the landlord or a relevant government agency about violations of the Code, a landlord may nonetheless maintain an action to recover possession of the dwelling unit, without committing retaliatory eviction, if the landlord meets one or more of seven requirements specified in the Code.  HRS § 521-74(b)(1)-(7).  Similarly, where a tenant makes a prior, good faith complaint to the landlord or a relevant government agency about violations of

the Code, a landlord may nonetheless increase the rent without committing a retaliatory rent increase if the landlord meets one or more of five requirements specified in the Code.  HRS § 521-74(d)(1)-(5).

**B.  Construed Liberally, the Tenant's Answer Contained a Counterclaim for Retaliatory Eviction**

The Tenant argues that his April 30, 2008 answer incorporated a counterclaim for retaliatory eviction against the Landlord and that the ICA erred by failing to address the tenant's counterclaim arguments in the second appeal.  He contends that language in his answer states a counterclaim for retaliatory eviction, namely, that he had been subjected to violations of the Residential Landlord-Tenant Code.

The Tenant titled a lengthy section of his answer, "Retaliatory Eviction."  At the close of that section, he asked the district court to find that "the current actions of providing notice to vacate and all future actions within a reasonable period of time represents [sic] a retaliatory eviction and is contrary to HRS 521-74 and the Complaint should be dismissed with prejudice."  In addition, the Tenant requested "lost wages for having to address Plaintiff's acts of retaliatory eviction, the filing of Complaint, answering of Complaint by filing of this [answer and motion to dismiss] and appearing at [the hearing on Landlord's complaint]."  Although

18

the Tenant admits that these statements were not captioned as a counterclaim, he contends the court should have nonetheless recognized that his answer included a counterclaim. Moreover, the Tenant argues that his attempt to assert a counterclaim should be held to "less stringent standards than formal pleadings drafted by lawyers."

We agree. "Pleadings prepared by pro se litigants should be interpreted liberally." Dupree v. Hiraga, 121 Hawai'i 297, 314, 219 P.3d 1084, 1101 (2009). "The rules do not require technical exactness or draw refined inferences against the pleader; rather, they require a determined effort to understand what the pleader is attempting to set forth and to construe the pleading in his favor." Id. (citing Giuliani v. Chuck, 1 Haw. App. 379, 385-86, 620 P.2d 733, 737-38 (1980)). This "determined effort" to understand the pleadings is particularly necessary "when a court is dealing with a complaint drawn by a layman unskilled in the law." Id. See also DCRCP Rule 8(c)(1996)("When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation."); DCRCP Rule 8(f)("All pleadings shall be construed so as to do substantial justice." (emphasis added)). Interpreting the Tenant's pro se answer liberally and "so as to do substantial justice," we hold that the Tenant

sufficiently stated a counterclaim alleging retaliatory eviction in his answer.

As noted above, retaliatory eviction is governed by HRS § 521-74. We interpreted this statutory provision in Cedillos, 136 Hawai'i 430, 363 P.3d 278. In Cedillos, the tenant filed a complaint for various violations of the Landlord-Tenant Code in district court the day before the landlord issued a 45-day notice to vacate. Id. at 442, 363 P.3d at 290. Several weeks later, the landlord sought leave to file a counterclaim for summary possession, and the circuit court granted the motion. Id. at 435-36, 363 P.3d at 283-84. We noted that the "sequence of events is important because it impacts whether various statutory rights and obligations . . . are triggered" under the Residential Landlord-Tenant Code. Id. at 441, 363 P.3d at 289. We held the tenant's complaint rendered the landlord's 45-day notice ineffective because "after" that triggering event, the landlord was prohibited from "causing the tenant to quit the dwelling unit involuntarily[.]" Id. at 442, 363 P.3d at 290 (quoting HRS § 521-74(a))(braces omitted). Analyzing the language of HRS § 521-74(a), we held that "absent certain exceptions, so long as the tenant continues to submit rent, once a tenant has 'complained in good faith' to the landlord or a governmental agency, the landlord is expressly prohibited from . . . maintaining an action or proceeding to

recover possession of the premises[.]" Id. at 442, 363 P.3d at 290.

We have long recognized retaliatory eviction as an affirmative defense to summary possession actions. Windward Partners v. Delos Santos, 59 Haw. 104, 116, 577 P.2d 326, 333 (1978)(holding that "where a tenant asserts a statutory right, in the protection of his property interest as a tenant, and as a result the landlord seeks to dispossess the tenant through summary possession proceedings, the tenant can assert an affirmative defense of retaliatory eviction"); id. (premising that holding "not only on safeguarding the effectiveness of the statutes involved, but substantially on the recognition of the salutary policy of protecting the property interests of the tenants from retaliating landlords").

A tenant, as a party in an action for summary possession, can also counterclaim for violations of the various statutory rights and protections guaranteed to tenants under the Residential Landlord-Tenant Code. See generally, Cedillos, 136 Hawai'i 430, 363 P.3d 278; see also S. Stand. Comm. Rep. No. 223, in 1972 Senate Journal, at 834 (noting that the legislature enacted HRS chapter 521 "to codify recent legislative, judicial, and administrative trends in equalizing the bargaining power of landlord and tenant and to treat fairly the interests involved"); 99 Am. Jur. Trials 289, § 8 (Supp. 2018)("Most

courts have acknowledged the tenant's right to assert retaliatory eviction as a defense or counterclaim to a landlord's action for possession or unpaid rent."). Other states have also recognized that retaliatory eviction may be asserted as a counterclaim. See, e.g., Aweeka v. Bonds, 20 Cal. App. 3d 278, 281 (Cal. App. 1971) (holding there was no discernible rational basis for allowing retaliatory eviction as a substantive defense while denying it as an affirmative cause of action); Morford v. Lensey Corp., 442 N.E.2d 933, 938 (Ill. App. Ct. 1982); Jablonski v. Clemons, 803 N.E.2d 730, 734 (Mass. App. Ct. 2004); Paullin v. Sutton, 724 P.2d 749, 750 (Nev. 1986); Sims v. Century Kiest Apartments, 567 S.W.2d 526 (Tex. App. 1978); Murphy v. Smallridge, 468 S.E.2d 167 (W. Va. 1996).

In addition, in Hawai'i the district court has jurisdiction "in civil actions involving summary possession or ejectment," and in those actions, "the district court shall have jurisdiction over any counterclaim otherwise properly brought by any defendant in the action if the counterclaim arises out of and refers to the . . . premises the possession of which is being sought, regardless of the value of the debt, amount, damages, or property claim contained in the counterclaim." HRS § 604-5(a)(emphasis added).

We hold that, liberally construed, the Tenant here stated a counterclaim for retaliatory eviction in his answer.

22

While continuing to tender the usual rent, the Tenant complained to the Landlord regarding her alleged violations of the Residential Landlord-Tenant Code. HRS § 521-74(a)(1)(requiring as a condition for a claim of retaliatory eviction that the tenant complained "in good faith to the . . . landlord . . . of conditions in or affecting the tenant's dwelling unit" constituting "a violation of . . . any provision of this chapter" prior to the landlord's maintaining of an action or proceeding to recover possession of the dwelling unit). Whether the contents of all the Tenant's complaints were as he claims, and whether the complaints were made in good faith, are issues of fact that were never established because no trial was held below. Similarly, the Landlord was never provided with an opportunity to plead or prove the defenses to retaliatory eviction detailed in HRS § 521-74(b)(1)-(7).

On remand the Tenant will have the opportunity to establish that he made the complaints to the Landlord alleged in his "implicit" counterclaim, and the Landlord will have the opportunity to present any evidence rebutting that. Both the Tenant and the Landlord will have the opportunity to present evidence as to whether the Tenant's complaints were made in good faith. In addition, on remand the Landlord and the Tenant will have the opportunity to present or rebut any evidence that the Landlord was entitled to maintain the action to recover

possession of the dwelling unit for any of the seven reasons specified in HRS § 521-74(b)(1)-(7). If he is successful in his counterclaim, the Tenant will have the opportunity to present evidence of damages. HRS § 521-74(c).

## IV. Conclusion

The ICA on the second appeal failed to address the issue of the Tenant's "implicit" counterclaim for retaliatory eviction. We hold that, liberally construed, the pro se Tenant's "Answer to Complaint & Motion to Dismiss" contained a counterclaim for retaliatory eviction. Accordingly, we vacate the ICA's judgment on appeal, except as to its reversal of the earlier award of attorney's fees to the Landlord, and vacate the judgment of the district court. We remand to the district court for further proceedings consistent with this opinion.

| | |
|---|---|
| John Herzog<br>petitioner pro se | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Douglas J. Sameshima<br>For respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

